THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ARTHUR L. MOORE, Defendant-Appellant.

First District (3rd Division) No. 61096

Opinion filed April 1, 1976.

778

Howard T. Savage and Patricia Unsinn, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Michael E. Shabat, and Edward V. Vienuzis, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

On March 3, 1972, an indictment was returned charging Arthur Moore and Leroy Chalmers with the offenses of armed robbery and aggravated battery. At a preliminary hearing, Moore and Chalmers presented oral motions to quash their arrests and to suppress evidence and the trial court ordered that these motions be denied. Moore and Chalmers then received separate trials. At the trial of Arthur Moore, defendant in the instant case, the motion to quash the arrest and suppress the evidence was renewed in written form and was again ordered denied by the trial court. An additional motion to suppress the identification testimony of a witness was offered, entertained, and denied. After a bench trial, Moore was found guilty as charged and was sentenced to a term of 6 to 18 years on the armed robbery charge and 2 to 6 years on the aggravated battery charge. The sentences were to be served concurrently. Defendant Arthur Moore now appeals from this judgment and sentence.

Defendant argues on appeal (1) that he was denied due process of law when the court denied him the opportunity to be heard on his written motion to quash the arrest and suppress evidence where an issue raised in

said motion had not been previously adjudicated; (2) that the court erred in denying defendant's motion to suppress identification testimony where the identification procedure employed by the police was unduly suggestive and conducive to irreparable mistaken identification; and (3) that he was denied due process of law because of the prosecution's failure to correct false testimony of an identification witness which testimony the prosecution knew was false.

We affirm.

The testimony adduced at trial indicated that at approximately 8:20 p.m. on December 23, 1971, the complainant, James Weir, was in bed watching television in his apartment located on the first floor of a building at 2701 West Evergreen Street in Chicago. In the apartment along with Mr. Weir were his wife and son, Timmy Weir, and a friend, Willie Jackson. Hearing a knock at the kitchen door, Willie Jackson opened the door and two men rushed into the apartment. Mr. Weir testified that one of these men had a gun, that the other man had a knife and that both men were wearing scarves which covered their faces up to the bridge of the nose. Upon entering the apartment, the two men pushed Willie Jackson and Timmy Weir into the bedroom. After the man with the gun, later identified by Mr. Weir as defendant Arthur Moore, jerked the wires from the telephone, the man with the knife ushered Willie Jackson, Timmy Weir and Mrs. Weir into the bathroom. The man with the gun then demanded that Mr. Weir give him his money. Mr. Weir produced his billfold containing approximately $2500 in checks and cash. The two men then proceeded to tie Mr. Weir's hands. Before leaving with Mr. Weir's money, the two men beat Mr. Weir about the head, knocking out all his teeth.

Mr. Weir further testified that at the time of the incident the lights were on in his apartment and that he could see the two men as they pushed their way into the apartment. While Moore was with Mr. Weir in the bedroom, Moore was standing approximately 18 inches from Mr. Weir and Mr. Weir was looking directly at Moore. Mr. Weir observed that Moore had a large nose and unusual hair. He described Moore's hair as "bushy like [Moore] had a hairdo and it was coming out." Mr. Weir further testified that Moore was wearing red and blue high-heeled shoes and two rings; that one of these rings was on Moore's small finger and the other, a "flashy" red ring, was on his index finger; that he [Weir] identified Moore at a lineup four days after the robbery; and that at this lineup Moore was wearing these same rings and shoes. Mr. Weir further stated that at the lineup he again noticed Moore's bushy hair and big nose.

Mr. Weir stated that the lineup at which he identified Moore consisted of three men. The first man in the lineup was Moore. The second man looked something like Moore, the age and weight and approximately the

same height. The third man in the lineup was shorter and maybe a couple of years older than the other two.

At the trial of Arthur Moore, Mr. Weir made an in-court identification of Moore. Mr. Weir's son, Timmy Weir, also identified Moore in court as the man who had robbed and beaten his father. At Moore's arrest two days after the robbery, a scarf belonging to Moore was taken and inventoried. When Mr. Weir made his original report to the police, he described the scarf Moore was wearing as brown and gray in color and having what appeared to Mr. Weir as squares in it. The scarf that was taken from Moore and inventoried had no squares in it, but in a wrinkled condition it appeared to have rectangles. This scarf was identified at trial by both Mr. Weir and his son as the scarf Moore used to cover his face during the robbery.

Arthur Moore, testifying in his own behalf, stated that on the day of the robbery he left his mother's house at 309 North Long at 7:20 or 7:30 p.m. and arrived at the Old Town Parking Lot at about 8 p.m. He talked with the manager, Willie Taylor, for a few minutes and then went across the street to the Pickle Barrel Restaurant to get coffee for Mr. Taylor. He went back to the lot, stayed until Mr. Taylor had finished the coffee and then went to Little Pleasures ice cream shop where he bought some cake and ice cream. He returned to the lot around 8:20 or 8:25, ate the cake and ice cream, and then went to the Hideout at 1446 North Wells, about three doors from the lot. Shortly after 9 p.m. he left the Hideout and went to Pepper's at 13th and Michigan. He stayed at Pepper's until 11 p.m. and then went to his mother's, arriving around midnight.

Willie Taylor, the manager of the Old Town Parking Lot, testified that he sent Arthur Moore to the Pickle Barrel to get some coffee for him about 8 or 8:15 p.m. on December 23, 1971. Moore returned to the parking lot with the coffee and stayed until 8:30 or 9 p.m. when he left walking toward the Hideout.

Moore testified that at the time of the lineup he was wearing a red shirt and red trousers and high knee boots. These boots were high-heeled, "black and brown and a greenish color and tan." Moore further stated that the shoes contained no blue coloring and that he was wearing no rings at the time of the lineup.

Moore went on to testify that he had his hair done the day before the robbery in a "pomp" hairstyle. His hair was "straightened but wavy" and did not stick out in all directions.

Approximately two weeks after the lineup at which Mr. Weir identified Moore, another lineup took place at which Mr. Weir identified Chalmers as the other man who had robbed him. Moore and Chalmers were tried separately, the trial of Chalmers occurring several months after the trial of Moore. Defendant Moore moved to add to the record in the instant

appeal certain excerpts from the record of Chalmers' trial and this motion was allowed. These excerpts indicate that Mr. Weir testified at Chalmers' trial and stated that he could not remember how Moore was dressed at the time of the lineup nor could he remember the composition of the lineup in which Moore participated. Mr. Weir further testified at Chalmers' trial that it was the man with the knife, Chalmers, who was wearing the rings at the time of the robbery and that he could not tell Chalmers from Moore at the time of trial nor at the time of the robbery. Mr. Weir described his erroneous testimony at Moore's trial concerning the rings as an honest mistake. Also added to the record in the instant case is a photograph which defendant contends depicts the lineup in which Chalmers participated. On the hand of the person in the lineup that defendant claims is Chalmers are what appear to be two rings.

■■ Defendant first contends that he was denied due process of law when the court denied him the opportunity to be heard on his motion to quash the arrest and suppress evidence. Defendant filed two motions to quash the arrest and suppress evidence. Defendant's initial motion was oral and made at the preliminary hearing. After a hearing, this motion was ordered denied by the trial court. Defendant's second motion which was written was made after indictment and prior to trial was based on the theory that the police lacked probable cause to effect his arrest and this second motion was ordered denied by the trial court without a hearing. It is clear that the denial of a motion to suppress at a preliminary hearing does not preclude the trial court from considering a motion to suppress when the case is called for trial. However, the failure of the trial court to entertain such a motion does not constitute reversible error absent an offer of proof of exceptional circumstances or evidence in addition to that submitted upon the first hearing on that motion. (*People v. Holland* (1974), 56 Ill. 2d 318, 307 N.E.2d 380.) Defendant argues that the original motion was directed solely to the question of whether the arrest of defendant was lawful where the arresting officer did not obtain a warrant for the arrest although he had an opportunity to do so. We disagree. It is clear from the record of the proceedings at the preliminary hearing that defendant's attorney and the trial court went into the issue of probable cause. Clearly the theory urged in the second motion was not a new theory. As stated in section 107—2(c) of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 107—2(c)), "A peace officer may arrest a person when * * * [h]e has reasonable grounds to believe that the person is committing or has committed an offense." In considering the original motion to quash the arrest the trial court explored the issue of whether there was probable cause to effect the arrest. The theory raised in the second motion was not a new theory. Defendant made no offer of proof of exceptional circumstances nor did he present any evidence in

addition to that presented upon the first hearing of the motion. The trial court did not err in denying defendant the opportunity to be heard on the second motion.

Defendant next contends that the court erred in denying his motion to suppress the identification. Defendant argues that the identification procedure employed by the police at the lineup was unduly suggestive and conducive to irreparable mistaken identification. At the evidentiary hearing on the above motion, the only witness who testified was the defendant who stated that the lineup was composed of three people, including himself; that the person to his right was 5'9" or 5' 10", 180 or 190 pounds, and approximately 40 years old; that the person on his left was 6 feet tall, heavier than himself and at least 40 years old. At this evidentiary hearing, Moore also testified that he was 19 years old at the time of the lineup. At trial, both Moore and Officer Danzl, one of the investigating officers in the case, testified that Moore was wearing red trousers and a red shirt at the time of the lineup. Using the police report to refresh his recollection, Officer Danzl testified at trial to the composition of the lineup. Officer Danzl stated that the lineup was composed of three individuals; that the first individual was 51 years old, 5' 11" tall and weighed 185 pounds; that the second individual, Arthur Moore, was 5' 10" or 11" and weighed 140 pounds; and that the third individual was 27 years old, 5' 10" tall, and weighed 180 pounds.

■■ The above evidence indicates that defendant was younger and 40 pounds lighter than either of the other two participants in the lineup. However, we do not find this age discrepancy and weight difference sufficient to make the lineup unduly suggestive and conducive to irreparable mistaken identification.

■■ Furthermore, even if it could be said that the lineup in the instant case was unfairly suggestive, the in-court identification of the defendant would still be admissible if it had an origin independent of the unfairly suggestive lineup. (*People v. Patrick* (1972), 53 Ill. 2d 201, 290 N.E.2d 227.) Mr. Weir testified that at the time of the robbery the lights were on in his apartment and that he could see the two men as they pushed their way into his apartment and pushed his son and a friend into the bedroom. Mr. Weir further stated that while Moore was in the bedroom with him, he was approximately 18 inches away from Moore. At this time Mr. Weir was looking right at Moore and observed Moore's features. Even though Moore was wearing a mask during the robbery, under such circumstances the in-court identification had an origin independent of the lineup and was thus properly admitted.

Defendant next contends that he was denied due process of law due to the failure of the prosecution to correct certain testimony known to be false. Defendant first complains of James Weir's statement at trial that the

lineup at which he identified Moore consisted of three men of approximately the same age, height, weight and appearance. Defendant further contends that this erroneous statement was corroborated by Officer Munyon, another of the investigators assigned to the case, who after looking at the police report concerning the composition of the lineup stated that he could not recall the approximate ages of the parties in the lineup; that they were approximately the same size—"within a few inches" in height and "15 or 20 pounds" in weight. Officer Munyon went on to state that he estimated the weight of Arthur Moore to be 170 pounds.

The record in the instant case contains no photographs of the lineup in which Moore participated. Officer Danzl testified that to the best of his knowledge photographs of the lineup were taken but were overexposed and unable to be developed. Officer Danzl, called as a witness for the defense and using the police report to refresh his recollection, further testified that the lineup was composed of three individuals, that the first individual was 51 years old, 5 feet 11 inches tall and weighed 185 pounds; that the second individual, Arthur Moore was 5 feet 10 or 11 inches tall and weighed 140 pounds; that the third individual was 27 years old, 5 feet 10 inches tall, and weighed 180 pounds.

■■  While it may be true that Mr. Weir was incorrect in stating that the members of the lineup were approximately the same age and weight and that Officer Munyon overestimated defendant's weight by 30 pounds, Officer Danzl accurately apprised the court of the composition of the lineup. Under such circumstances, there was no need for the prosecution to correct any testimony concerning the lineup and the failure to so correct constitutes no denial of due process.

Defendant further complains of Officer Munyon's statement at trial that on the day following the occurrence Mr. Weir told him about the rings and shoes he had observed on one of his assailants. Defendant contrasts this statement to a statement made by Officer Danzl in the subsequent trial of Chalmers in which Officer Danzl stated that nothing was mentioned to him concerning jewelry worn by either defendant. We see no contradiction in these statements. It is possible that Mr. Weir told Officer Munyon of the rings and shoes and said nothing of the rings and shoes to Officer Danzl.

Defendant finally complains of Mr. Weir's statement that Moore was wearing two rings both at the scene of the crime and at the subsequent lineup. Weir admitted, while later testifying in the trial of Chalmers, that it was Chalmers not Moore who was wearing the rings.

■■  It is clear that the prosecution's use of testimony known to be false is a practice so lacking in fundamental fairness as to deprive an accused of due process of law. (*People v. Martin* (1974), 56 Ill. 2d 322, 307 N.E.2d

388; *Ray v. Rose* (E.D. Tenn. 1974), 371 F. Supp. 277; *Naue v. Illinois* (1959), 360 U.S. 264, 3 L. Ed. 2d 1217, 79 S. Ct. 1173.) Such false testimony need not relate to a material issue to fall into the field of fundamental unfairness. Due process is likewise denied where the falsity goes to the credibility of a witness. (*People v. Martin.*) Once the condemned use of perjured testimony has been established, the burden is then placed on the State to establish beyond a reasonable doubt that the perjured testimony did not contribute to the conviction. (*People v. Bracey* (1972), 51 Ill. 2d 514, 283 N.E.2d 685; *People v. Martin.*) If the People can sustain this burden and show beyond a reasonable doubt that the perjured testimony did not contribute to the conviction, the judgment, barring other errors, should be affirmed.

In the instant case the defendant argues that the prosecution, through its agents, the police, had knowledge of the falsity of Weir's statement that Moore was wearing rings. The knowledge of the police, defendant argues, is established by a photograph of the lineup in which Chalmers participated. This photograph shows what appear to be rings on Chalmers' fingers. Assuming without deciding that the above is sufficient to show that the prosecution had knowledge of the falsity of Weir's statement, we conclude that the State has shown beyond a reasonable doubt that such statement did not contribute to defendant's conviction.

■■ Defendant having waived his right to a jury trial, was convicted after a bench trial. We believe that in light of all the other evidence presented to the trial court, the State has shown beyond a reasonable doubt that the erroneous testimony did not contribute to defendant's conviction. In addition to the rings Mr. Weir claimed Moore was wearing, Mr. Weir's identification of Moore at the lineup was based on Moore's big nose and bushy hair. According to Moore's own testimony, he had his hair styled the day before the robbery. In addition to Mr. Weir, Timmy Weir identified Moore in court as one of the assailants. Both Mr. Weir and Timmy Weir identified the scarf taken from Moore when he was arrested as the scarf used by Moore to cover his face during the robbery. It is our decision considering all the evidence, that the State has shown beyond a reasonable doubt that the admittedly false testimony of Mr. Weir concerning the rings did not contribute to defendant's conviction.

For the above reasons the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

DEMPSEY and McNAMARA, JJ., concur.