THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
KENNETH MATHIS, Defendant-Appellant.

First District (4th Division)    No. 62430

Opinion filed December 8, 1977.—Rehearing denied December 22, 1977.

Leonard Karlin, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Michael E. Shabat, and Linda Dale Woloshin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

The defendant, Kenneth Mathis, was arrested on February 26, 1973, and charged with the offense of armed robbery in violation of section 18—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 18—2). He was indicted and tried by a jury in the circuit court of Cook County. A verdict of guilty was returned and on August 30, 1974, the defendant was sentenced to serve 4 to 6 years in the Illinois State Penitentiary. The defendant appeals from this conviction.

The issues presented for review are (1) whether the defendant's arrest for armed robbery was unlawful; (2) whether the trial court properly refused to allow the defendant to relitigate his motion to quash the arrest before the jury; (3) whether error was incurred by the State's failure to make available to the defendant a witness whom the defendant wished to examine at the hearing on his motion to suppress the identification and other requested materials before proceeding to trial; (4) whether defendant was prejudiced by an unduly suggestive lineup procedure; and (5) whether defendant was prejudiced by the alleged failure of an investigating officer to make an adequate record of his activities.

On February 19, 1973, at approximately 8 p.m., the complainant, Bennie Franklin, returned to his home at 7848 South Ada, in Chicago, after shopping for groceries. He drove his four-door 1973 Chevrolet automobile into the alley adjacent to his home in order to unload groceries from the trunk. The complainant testified at trial that he got out of the car, left the engine running, and then opened the car trunk. As he was standing by the trunk, he noticed a man, approximately 10 feet away from him, "coming down the street." Franklin then returned his attention to his groceries. The man then approached Franklin from behind, pulled out a snub-nosed .32- or .38-caliber revolver and pointed it straight at him. The witness testified that he could see clearly during the robbery because there was a street light on Ada located approximately 10 feet from his

parked car. There was also a hoodlight located in the center of the raised rear hood of the Chevrolet. Franklin testified that his attacker asked for money. When he discovered the witness carried no money, the assailant slammed the car trunk down, jumped into the automobile, and fled.

Franklin described the stolen automobile in detail as a "1973 Chevrolet, license plate BF 1302, brown, beige top. I had initials on the side, BEN, in letters." He testified that he next saw his car on February 26, 1973 when police investigator Hayes took him to the third district police station to view the vehicle. He was able to recognize his car; the license number was still BF 1302. Although the initials, BEN, had been removed, the outline of the initials, formed in a residue of glue, was still visible on the car. Franklin testified that he had described his assailant to police officers immediately following the robbery as being approximately 6 feet 3 inches, "light skinned," and approximately 28 or 29 years of age.

On February 26, 1973, police officers Raymond Binkowski and Donald Mitchell curbed a 1973 brown Chevrolet with a beige top and Illinois license BF 1302 at 70th and Stony Island Avenue, in Chicago. Officer Mitchell testified at the preliminary hearing that the stop was made because the driver of the vehicle, the defendant, was clocked driving at a speed of 42 miles per hour in a 30-mile-per-hour speed zone. Officer Mitchell stated that when he first observed the Chevrolet, it was traveling at an accelerated rate of speed and that this first brought his attention to the vehicle. After the defendant was stopped, he was immediately informed that he was going to be issued a citation for speeding. The defendant produced only a temporary driver's permit and did not possess a bond card. As the officer and his partner stood on the opposite sides of the automobile, they observed that there was only one key in the ignition. The witness stated that the area in which Mathis was stopped had a very high rate of automobile theft and that it was common practice for a thief to "pull" a door lock on a car and punch a blank key which could be used as an ignition key to drive the vehicle away. The officers also observed that the lock and door on the glove compartment had been pried open. The lock was broken and the light from inside the glove compartment was shining through the hole. This caused the officers to run a "hot and cold" on the defendant's license plate through their radio dispatcher. The dispatcher immediately reported that the curbed vehicle had been taken in an armed robbery and sent an assist car to the officers' location. Both the defendant and his passenger, Sylvester Collins, were ordered out of the vehicle, given their *Miranda* warnings, and were subsequently transported to the third district police station for processing. Officer Binkowski testified at trial that at the police station the defendant claimed the stolen Chevrolet had been loaned to him by Ralph Estese. Mathis described Ralph Estese to Officer Binkowski who, after reading the

original robbery report, noted on his police report that the description matched the complainant's description of the person who robbed him. The arresting officers then finished their report and turned it over to robbery investigators.

Investigator Alonzo Hayes interviewed the defendant at the police station on the night of the arrest. Investigator Hayes was informed by Mathis that the automobile had been given to him by Ralph Estese. Hayes testified at trial that the defendant gave him a description of Estese and told him that he (Mathis) had an appointment to pick Estese up in front of Rand Liquors at 55th and State Street at 10 o'clock that evening. The investigator then went to that location, arriving at approximately 9:50 p.m. He remained there until approximately 12:30 a.m. and during that time he did not see Estese. Investigator Hayes subsequently went to the home of Estese's mother at 55th and Lafayette Street. He remained at that location for approximately 15 minutes and could not find Ralph Estese. Hayes testified that he then went to the home of the complainant, Bennie Franklin. He transported Franklin to the police station where the defendant was being held. Franklin viewed the automobile in which the defendant had been arrested and identified it as his property. Investigator Hayes then arranged for a lineup. As Franklin entered the room, the five men in the lineup all faced the opposite wall. They were then instructed by Investigator Hayes to turn around, step forward individually, and state their name, address, age, and place of employment. When this procedure was completed, the complainant identified the fourth man in the lineup, the defendant, as the person who had robbed him a week earlier. At trial, the complainant again identified the defendant as the man who had robbed him and as the man he had seen in the lineup.

The defendant testified at his preliminary hearing that prior to being stopped on the night of February 26, 1973, he never exceeded a speed of 30 miles per hour. He had been unable to locate Sylvester Collins to testify in his behalf because he (Mathis) had been incarcerated for 3 months prior to the trial. Mathis testified that Officer Mitchell informed him immediately that he had been stopped for speeding. The officer then took his temporary driver's permit and proceeded to issue the defendant a speeding ticket. The defendant sat in the Chevrolet while the officers returned to their vehicle; he was subsequently arrested for "speeding in a hot car." Mathis testified that on February 26, 1973, at approximately 6 p.m., he had borrowed the Chevrolet from Ralph Estese. He stated that he did not notice the condition of the glove compartment while driving the vehicle.

After hearing the testimony of the witnesses and the arguments of counsel, Judge Suria found probable cause existed to stop the defendant for speeding based on the testimony of the two officers and defendant's

statement that he was immediately informed of the reason for the stop. The court found that probable cause existed, although the testimony raised some discrepancies as to exactly where the defendant was first observed by the officers and how long they may have clocked the vehicle prior to the stop.

The jury returned a verdict finding the defendant guilty of armed robbery (Ill. Rev. Stat. 1973, ch. 38, par. 18—2). After a hearing in aggravation and mitigation, the defendant was sentenced to serve 4 to 6 years in the Illinois State Penitentiary.

■■ ■ The defendant first contends that Officers Mitchell and Binkowski did not have probable cause to arrest him for armed robbery. According to the defendant, his arrest for speeding did not justify his "lengthy" detention and subsequent custodial arrest. He denies that he was speeding and insists that he was stopped simply because he was driving in an area with a high rate of auto theft. The defendant argues that his allegedly unlawful detention is analogous under the law to an unlawful search. He points out that an arrest for a traffic violation may not be used as a subterfuge for any broad-ranging search or detention, or "fishing expedition," that would not be justified without the traffic stop. Where the purpose of a traffic stop is a pretext for a search or detention rather than for a traffic violation, such a search or detention is improper. (*Amador-Gonzalez v. United States* (5th Cir. 1968), 391 F.2d 308.) Furthermore, requiring the traffic offender to go to the station to post a bond does not extend the scope of lawful search or detention. (*People v. Jordan* (1973), 11 Ill. App. 3d 482, 297 N.E.2d 273.) The defendant asserts that in order for a custodial arrest to follow a simple traffic arrest, the circumstances must reasonably indicate that the police may be dealing not with the ordinary traffic offender, but with a criminal. (*People v. Tate*, (1967), 38 Ill. 2d 184, 230 N.E.2d 697.) He contends that no circumstances existed in the instant case to justify his custodial arrest. Therefore, according to the defendant, his arrest for armed robbery was unlawful, and under *Mapp v. Ohio* (1961), 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, defendant's motion to quash the arrest should have been granted and the defendant discharged. We disagree.

■■ The officers testified at all times that the defendant was stopped for speeding and for no other reason. The defendant testified that he was immediately informed by the officers that he had been clocked traveling at a speed of 42 miles per hour in a 30-mile-per-hour speed zone. We find the evidence is sufficient to support the trial court's finding at the preliminary hearing that there was probable cause to stop the defendant for speeding. The defendant was initially subject to a detention and custodial arrest when he failed to produce a valid driver's license or bond

card which could be surrendered in lieu of or in addition to bail. (Ill. Rev. Stat. 1973, ch. 110A, par. 526(a).) The record indicates that Mathis was detained for a total period of 10 minutes before he was arrested for armed robbery and transported to a police station. We do not believe that such a detention was unreasonable.

■■ The officers testified they first suspected that they were confronted with more than the ordinary traffic offender when they observed the pried glove compartment lock, the light shining through the glove compartment, and only one key in the ignition. Both knew from their experience that it was a common practice in that general area for professional car thieves to pull a door lock, punch one blank key, and drive away. Under these circumstances, it was reasonable for the officers to run a "hot and cold" on the vehicle while the defendant was being detained for the speeding violation. Sufficient grounds to believe that an offense has been committed and that the defendant has committed it may reasonably be founded upon information received from a police radio call. (*People v. Taylor* (1974), 58 Ill. 2d 69, 72, 317 N.E.2d 97, 99.) Thus, when the information came through their dispatcher that the vehicle driven by the defendant had been stolen 1 week earlier in an armed robbery and it was suggested that an assist car be sent, the arresting officers were fully justified in believing that a criminal offense had been committed and that the defendant had committed that offense. In Illinois, an arrest without a warrant is not proper unless the conditions prescribed by statute are met. (3 Ill. L. & Prac. *Arrest* §4 (1953).) The Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, par. 107—2) provides that:

"A peace officer may arrest a person when:

* * *

(c) He has reasonable grounds to believe that the person is committing or has committed an offense."

The statutory requirement for a proper warrantless arrest was met under the instant circumstances; therefore, the arrest of the defendant was legal. Ill. Rev. Stat. 1973, ch. 38, par. 107—2.

The defendant next contends that the trial court's refusal to allow him to relitigate at trial the lawfulness of his arrest, which was adjudicated earlier in his pretrial motion to quash the arrest, denied him his right to a trial by jury. Defendant contends that at the hearing he unfairly did not have the benefit of the presumption of innocence and was obliged to sustain his contentions by a preponderance of the evidence. We disagree.

■■ The law does not support defendant's claim that he has a right to relitigate the substance of his pretrial motion to quash the arrest before a

jury. The Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, par. 114—12(b)) provides that in a hearing on a motion to suppress evidence illegally seized:

> "(b) The motion shall be in writing and state facts showing wherein the search and seizure were unlawful. The *judge* shall receive evidence on any issue of fact necessary to determine the motion and the burden of proving that the search and seizure were unlawful shall be on the defendant." (Emphasis added.)

It is proper for a trial judge, in order to give to the defendant the opportunity to present new evidence or demonstrate other changed circumstances, to hear a motion to suppress even though a prior motion to suppress has been denied by a preliminary hearing judge. (*People v. Durruty* (1974), 18 Ill. App. 3d 335, 337, 309 N.E.2d 802, 803-04.) However, where the substance of defendant's subsequent motion to suppress evidence or to quash his arrest is the same as his prior motion already determined at a preliminary hearing before a different judge, and defendant makes no offer of proof as to new evidence or exceptional circumstances, the denial of a hearing on the subsequent motion is proper. (*People v. Moore* (1976), 37 Ill. App. 3d 777, 781-82, 347 N.E.2d 331, 335; *People v. Gierbolini* (1975), 27 Ill. App. 3d 75, 77, 327 N.E.2d 297, 298.) In the instant case, defendant made no offer of proof as to exceptional circumstances or new evidence. Therefore, defendant was not entitled to an additional hearing on his subsequent motion to quash his arrest or to retry that motion before the jury.

The defendant next contends that error was incurred by the State's failure to call a witness whom the defendant wished to examine at the hearing on defendant's motion to suppress the identification. He claims that it was error of constitutional magnitude (in violation of the sixth amendment of the United States Constitution and article I, section 8, of the Illinois Constitution), for the State not to produce the author of a certain police report notation. The notation stated in reference to the complainant, "Interviewed 21-February-73, 1845 not certain if can identify but will view photo." According to the defendant, the nondisclosure of the identity of the officer who authored the notation until immediately prior to trial and his absence at the hearing deprived defendant of the right to compel the presence of witnesses in his behalf, to meet witnesses face to face, and to·challenge the in-court admissibility of the complainant's identification of the defendant. Thus, defendant insists that it was error to proceed to trial without making available to the defense the author of the police report notation.

The State contends, and we agree, that it was not error for the trial court to proceed to trial under the circumstances.

■■ The record establishes that the State filed its answer to defendant's

motion for pretrial discovery on April 12, 1973. The police reports containing the notation in question were made available to defendant on April 2, 1973, more than one year prior to the hearing on the motion to suppress the identification. On March 13, 1974, defense counsel answered ready for trial before Judge Suria. On June 4, 1974, at the hearing before Judge Fleischman on the motion to suppress the identification, defense counsel was supplied with all information and materials which he claimed had been sought in his discovery motion and withheld by the State. Defense counsel was informed of the identity of Officer Folkes, author of the notation, and that Folkes would be on furlough until June 20. Defense counsel then offered to waive the pretrial hearing and reserve the right to challenge the identification before the jury with the testimony of Officer Folkes. The court informed counsel that as he had answered ready to proceed on his motion, the court would hear any further evidence, rule on the motion, and then proceed to select a jury. Defendant was not prejudiced by the court's direction to proceed since any alleged inconsistency in the complainant's testimony could have been established by the proper use of the notation. (*People v. Kees* (1965), 32 Ill. 2d 299, 304, 205 N.E.2d 729, 731.) Defense counsel made no objection and his motion was therefore properly considered and denied.

The defendant next contends that he was prejudiced by an unduly suggestive lineup procedure. Defendant maintains that his identity was improperly suggested to the complainant prior to his identification, that the identification was not from the complainant's own prior recollection, and that the identification was therefore tainted. He also argues that the lineup participants were grossly dissimilar to him in appearance and that it was improper under the circumstances to have each participant state his name and address. Defendant points out that he may have become a "hotter suspect" because he lived closer to the complainant than the other participants. We disagree.

■■ The record does not support defendant's contentions. Investigator Hayes testified that he did not disclose to Mr. Franklin anything about the identity of the person involved in the investigation or point out to him any individual in the lineup. Franklin testified that during the ride to the police station Hayes did not say anything to him and that he recognized the defendant as the man who had robbed him. The record further reveals that the ages of the five lineup participants were 17, 20, 22, 23, and 24 (the defendant's age). Three of the participants, including the defendant, were approximately 6 feet in height. We find the record fails to support the conclusion that the lineup was unduly suggestive. Finally, the law is established that there is no proscription against having a lineup participant speak. (*United States v. Wade* (1967), 388 U.S. 218, 222-23, 18 L. Ed. 2d 1149, 1154-55, 87 S. Ct. 1926, 1930.) Here, where defendant

688

lived at least 1¼ miles from the robbery scene, and there is no evidence that the complainant recognized defendant's address or concluded that he walked to the robbery scene, we do not believe that defendant was unduly prejudiced by the lineup procedure.

■■ We find it unnecessary to discuss other issues raised by the defendant which we have considered and find to be without merit. As established in the case of *Needy v. Sparks* (1977), 51 Ill. App. 3d 350, 372, 366 N.E.2d 327, 347, the object of an appellate court on review is "not to determine whether the record is totally free of error, but whether any error occurred which operated to the prejudice of the appellant or unduly affected the outcome below." In our application of the standard set forth in *Needy*, we have carefully reviewed the record here and conclude that the instant defendant was not prejudiced by the trial court, and that any errors committed do not require a new trial or reversal of defendant's conviction. *Needy*, at 372-73.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

DIERINGER, P. J., and ROMITI, J., concur.