THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
RONALD COLEMAN, Defendant-Appellee.

First District (1st Division)   No. 80-1253

Opinion filed September 21, 1981.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr and Pamela L. Gray, Assistant State's Attorneys, of counsel), for the People.

Giovannini & Goldberg, of Chicago, for appellee.

Mr. PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

The defendant was charged with the offense of possession of a controlled substance. At a preliminary hearing, wherein defendant declined to testify, defendant's motion to suppress was denied and a finding of probable cause was made. Thereafter, an information was filed charging defendant with two counts of possession of a controlled substance, heroin and cocaine. During a bench trial, after the People had rested their case-in-chief, the defendant was allowed to re-open the motion to suppress the arrest and physical evidence and defendant was allowed to testify in support of the motion. Over the objections of the State, the said motion was sustained. The People have prosecuted this appeal pursuant to Supreme Court Rules 604(a)(1) and 606 (Ill. Rev. Stat. 1977, ch. 110A, pars. 604(a)(1), 606).

On appeal, the People have raised the following issues: (1) whether a defendant who declines to testify in support of his motion to suppress is barred by collateral estoppel from relitigating the motion, 6 months later, in order to offer his own testimony which cannot be characterized as newly available; and (2) whether the stop of the car in which defendant was a passenger was proper where the car was speeding and whether the search of defendant's coat was proper where defendant abandoned his coat at the scene when he fled from the police.

On September 18, 1971, at the preliminary hearing, defendant presented the testimony of Officer Robert Whalen in support of his motion to suppress. Officer Whalen testified that on August 1, 1979, at 9 p.m., he was in his marked squad car at 4041 West Lake Street. At that time, he saw a car leave from a parked position at a high rate of speed. He followed the car for 1 to 1½ blocks, travelling over 35 miles per hour. The car continued to pull away from the officer. The posted speed limit was 30 miles per hour. The car stopped at Lake Street when he activated the "Mars" light. The car made a right turn and was in the process of pulling over to the curb, when defendant opened the front passenger's door, alighted from the car and started to run. Defendant was holding a coat in his hand which caught on the car's open door. Following an unsuccessful chase of defendant, he returned to defendant's coat which had fallen on the ground. He went through the pockets of the coat and recovered several plastic bags containing heroin and cocaine.

During cross-examination the objection of the People was sustained when the officer was asked by defense counsel to state his purpose in pulling the car over. In rebuttal, the defense called Officer Whalen and was allowed over the People's objection to question the witness concerning events preceding those testified to previously by the officer. Officer Whalen testified that at 8:45 p.m. on August 1, 1977, he saw defendant standing by a parked car on Washington Street. He did not question defendant at that time. He did, however, approach defendant that night prior to seeing him in the car which had stopped. Defendant was stopped about 10 minutes before the car in which he was riding was stopped. At that time, defendant was approached by Officer Whalen in the 4100 block of West Washington. Defendant was asked "why he ran from us," and conducted a protective search for the officer's safety. After the conversation, defendant was released.

After defendant was released, the officer drove into an alley and observed defendant as he looked up and down the street and then entered an abandoned building. After a few minutes, defendant came out of the building carrying a jacket that he had been wearing when he walked in. Defendant looked up and down the street again, and then ran east on Washington Street and got into a car. It was at that point that the officers

saw the car pull off. The court denied the People's motion to strike the officer's rebuttal testimony and made a finding of probable cause. An information was subsequently filed.

At trial, the People presented the testimony of Officers Henk and Whalen whose testimony was substantially the same as the previous testimony given by Officer Whalen at the preliminary hearing. Additionally, Officer Henk testified that the car was stopped due to defendant's actions and due to the manner in which the car took off and its rate of speed. He testified that during his initial stop of defendant, and the patting down of defendant's jacket, that there was nothing in the pockets of said coat at that time. Officer Whalen added that the car was stopped because it had sped off, its tires were squealing and he felt the car might be involved in some activity. He also testified that he did not feel anything in the defendant's jacket pocket during his initial stop of defendant.

Following a stipulation regarding the nature of the substances recovered, the People rested. Defense counsel then moved to re-open the motion to suppress that was conducted before a previous judge. Defense counsel argued that the previous judge did not allow or consider evidence regarding the officers' state of mind or intentions at various times when defendant was stopped. Counsel further argued that the illegal activity of the police officers caused defendant to flee and that, therefore, defendant did not actually abandon his coat. The court reserved its ruling. Later defendant filed a written motion to suppress the arrest and physical evidence asserting that the additional evidence which was not available was that the police stopped defendant's car because the tires were screeching and because they wanted to find out if defendant was involved in any criminal activity. Counsel argued that those reasons raised the importance of the officers' state of mind to show that the coat was not abandoned.

Defendant claimed that the first time that defense counsel was allowed to inquire as to the reason for the officers' initial stop of defendant was during their testimony at trial and that the court found that such stop was a custodial arrest even though he was not taken to the station, and no charges were filed at that time. Defendant further asserts on appeal that the court found that the reason given for the initial stop of defendant by said officers was newly discovered evidence, first becoming available to the defense at trial, and on that basis granted defendant's motion to re-open defendant's motion to suppress evidence over the State's objections.

The testimony of defendant contradicted that of the arresting officers in several particulars. Defendant testified that when he first saw the police car drive past him he was standing on the driver's side of his friend's car in the street, not ducking down behind the passenger side as testified to by

the officers. Defendant ran across Washington Street because he thought he saw his girl friend in the alley north of Washington Street. Defendant did not notice any police officers shouting at him to halt as he ran across the street. When defendant was initially stopped by the officers and asked why he ran from them, defendant responded "I didn't run from you, I had no reason to run from you." During his initial stop the officers searched him by going into his jacket and patting his pockets. During his initial stop, and while still outside of the squad car, one of the officers had a long black club in his hand. While in the squad car one of the officers threatened to hit the defendant in the head with his billy club. While defendant was in the squad car one of the officers asked defendant the name of his girl friend, and defendant gave them the name. While defendant was in the squad car one of the officers left the car to check on defendant's girl friend's name and address, and returned to the car and said that the name and address given by defendant checked out. While in the squad car one of the officers threatened to lock the defendant up for disorderly conduct. One of the officers then told defendant to get out of the neighborhood, and defendant was released from the squad car.

Defendant further testified that after he was released from the squad car he went up on the porch and waited for his nephew to return. Defendant sat on the porch until he saw his nephew's car pull up. As defendant was running toward his nephew's car he saw the police car drive past him.

Defendant further testified that as his nephew pulled his car from the curb that the tires did not screech, and that his nephew was driving at the regular speed limit. As the car in which defendant was riding was pulled over to the curb by the police, defendant told the other persons in the car "I am not going to let them jump on me and hit on me." Defendant testified that he ran because the police had threatened him. When defendant ran out of the auto his jacket was left on the front seat of the car. Defendant's jacket did not fall to the ground as he exited the car. As a result of the testimony of defendant, the court stated:

> "But there is much too much in the police version of what happened which corroborates the defense version of what happened. The police say he ran, he says he ran. There is nothing wrong in running. He hadn't committed any crime at that time. The police searched him, stopped him after that, asked him why he ran. They said he said because he likes to run. He said he told them he was running because he was trying to find somebody, and they inquired as to why he was in the neighborhood; and according to him, told him he better get out of the neighborhood, not to be found there again, they would be rough on him."

Again, after both sides had rested, the court further stated that:

"Well, now still all he has done is run and leave an abandoned building and what he has left is a jacket. What is the basis for them to search his jacket. They have already searched it, patted him down and everything, found nothing. Why would they search it now, because he left the abandoned building. Well, evidently assuming that he must have picked up something in the abandoned building and he is about to—that is good police action I guess if they know there is a distribution center some place, they suspect he is a runner or dealer so they put two and two together and they move in and they might very well have frustrated some criminal activity, if so that activity was frustrated and the heroin never got to where it was going; but just because it is good police work doesn't mean that we can accept it in court. Under the circumstances, I will sustain the defendant's Motion to Suppress."

The People urge that defendant was not entitled to a second hearing on his motion to suppress, six months after the first, for the sole purpose of offering the testimony of the defendant, which had always been available, and that the ruling of the court was manifestly erroneous, in the absence of either newly available evidence or exceptional circumstances.

■■ The State has asserted that the doctrine of collateral estoppel barred relitigation of the issue of whether defendant's coat was abandoned and argues that Illinois law is clear that when a defendant moves to suppress evidence and his motion is denied, the defendant is not entitled to a subsequent hearing on the same motion unless he can show exceptional circumstances or new evidence which could not have been brought out or was not available at the first hearing. In support of its position the State has cited *People v. Hopkins* (1972), 52 Ill. 2d 1, 284 N.E.2d 283, and *People v. Armstrong* (1973), 56 Ill. 2d 159, 306 N.E.2d 14, which cases involved multiple prosecutions, wherein the supreme court extended the collateral estoppel doctrine to motions to suppress evidence which were denied at the preliminary hearing and then raised anew at post-indictment, pretrial proceedings. In *People v. Armstrong* the court stated:

> "* * * the doctrine of collateral estoppel bars the relitigation of an order sustaining the validity of a search, in the absence of additional evidence or peculiar circumstances there mentioned." (56 Ill. 2d 159, 161.)

Moreover, in *People v. Holland* (1974), 56 Ill. 2d 318, 307 N.E.2d 380, where the trial judge had refused to rehear a second motion to suppress evidence at trial, the court stated:

> "* * * there has been no suggestion of exceptional circumstances or any evidence in addition to that submitted upon the first hearing which had become available for submission in connection with the motion to suppress." 56 Ill. 2d 318, 321.

Defendant contends that the trial court in the instant cause did not abuse its discretion in allowing defense counsel to reopen a motion to suppress evidence where there was present both additional evidence not available during the first hearing, and where there were exceptional circumstances surrounding the discovery of said evidence which necessitated the additional testimony of the defendant on said motion. Counsel for defense in response to an inquiry as to what additional evidence did he have to produce responded,

"My intention is to produce the testimony of the defendant as to what prompted him to run from that car and that testimony I expect will include a series of events leading up to that stop."

Earlier in the proceedings in response to an inquiry from the court as to additional information, counsel for the defendant stated:

"* * * the one thing that is not in there, which is the crucial element that I was trying to get to, the officer's state of mind when he stopped the vehicle. The judge previously, specifically had not allowed him to answer. When he considered this, he considered it strictly as to whether it bore on the officer's credibility."

Defense counsel then indicated that he did not know what the officer's state of mind was at the time and based on that state of mind the testimony of defendant would bear on the ultimate issue. The previous judge had sustained objections to defendant's attempt to elicit from the officers why the car had been stopped and would not allow the officer's state of mind into evidence. Defendant argues that the first time that counsel was allowed to elicit from either of the officers the actual reason for the stop of said car was during their testimony before the trial judge. It was at this time that it became apparent that the stop of said car was not for the purpose of issuing a traffic citation to the driver, but to further investigate defendant's activities. It was this newly discovered evidence of the officer's state of mind that defendant moved to re-open his motion and suppress evidence. This was done at the close of the State's case in chief.

The State argues that the ultimate issue of fact, whether defendant's coat was abandoned, was thoroughly and completely litigated at the preliminary hearing before a previous judge and that both *Armstrong* and *Hopkins* bar the relitigation in the absence of additional evidence or exceptional circumstances.

We agree with the contention of the State that the record does not support the charge by defendant of exceptional circumstances in this case as were found to be present in *People v. Stiles* (1981), 95 Ill. App. 3d 959, where the issue was the effective assistance of counsel at the prior hearing. It follows that support, if any, for the position of defendant must be found to satisfy the test of newly discovered evidence. Defendant, in

his testimony at trial, sought to present evidence in addition to that submitted upon the first hearing. *People v. Holland.*

■■ ■ The general principles as to what constitutes newly discovered evidence are largely set forth in decisions considering motions for a new trial on the ground of newly discovered evidence. The established rule is:

"* * * that a new trial will only be granted for newly discovered evidence where it is shown that it could not have been produced on the trial by the use of reasonable diligence, and if the evidence is cumulative in character it must be conclusive, necessarily leading to a change in result." (*People v. Grady* (1942), 381 Ill. 224, 233, 44 N.E.2d 880, 884.)

Applications for a new trial on the ground of newly discovered evidence are not looked upon with favor and must be closely scrutinized. (*People v. Dukes* (1960), 19 Ill. 2d 532, 169 N.E.2d 84.) The evidence must not be merely cumulative and should be of such conclusive character that it will probably change the results if a new trial is granted. *People v. Dukes*; *People v. Ilich* (1975), 25 Ill. App. 3d 334, 323 N.E.2d 509.

The precise question for our resolution is whether the so-called newly discovered evidence of the officer's state of mind and the reasons for stopping the car justifies the granting of a rehearing of defendant's motion to suppress. One factor to be considered is whether the matters set forth at trial could have been presented in the first hearing. Defendant has cited *People v. Colletti* (1978), 61 Ill. App. 3d 289, 377 N.E.2d 1276, for his position in that the defendant's testimony alone was sufficient new evidence to warrant a reconsideration of his previously denied motion to suppress. In *People v. Colletti*, the court stated:

"The major issue in this case is whether a defendant charged under the Illinois statute with having 'obtained control' over stolen property on a certain date may have that charge dismissed prior to trial by introducing proof at a hearing that he gained possession of the property much earlier in time, so that the statute of limitations had run prior to commencement of his prosecution. A secondary issue is whether the testimony of the defendant is to be considered new evidence so that the defendant is not barred from relitigating the issue whether the statute of limitations has run where he did not testify at the first hearing but did at the second. We hold that the second hearing was proper under the circumstances, but that the indictment should not have been quashed before the State had the opportunity to prove at trial the specific offense charged.

* * *

The focus of the hearing on defendant's second motion centered on his claims as to when he first acquired the property at issue. Defendant sought to establish that he acquired the property in

1968, therefore preventing his prosecution in 1974 because the statute of limitations had run." (61 Ill. App. 3d 289, 290-92.)

The court held that it was obvious that additional evidence was presented on the issue of the dates and acquisition of certain property involved in the theft charged and ruled that the court did not err in hearing the second motion even though the same issue had been ruled upon earlier.

We do not find the *Colletti* case to be controlling here for the reason that the court found that it was obvious that additional evidence was presented on the matter of dates which was critical to the case and that the defendant's testimony did not "become available after the first hearing to suppress." The court ruled that the basis for the denial of the first motion was predicated on the testimony of a lieutenant that defendant told him that defendant acquired the property in 1974 and defendant did not testify except by use of an affidavit as to his residence. In the second motion defendant contended that he acquired the property in 1968 and that the prosecution was barred by the statute of limitations. We do not have the benefit of the defendant's testimony on the issue of the dates, but the court stated that it was obvious that additional evidence was presented. We infer that the court was presented with conflicting evidence as to when the defendant first acquired the property in issue, 1968, or 1974, and it was only after the parties had fully presented their evidence that the court was in a position to determine the merits of defendant's claims when he actually acquired the property. The court found that defendant, prior to trial, could not seek to change the relevant dates contained in the indictment by presenting contrary proof on the matter. The court sustained the defendant's motion on the grounds that defendant's testimony given under oath had not been overcome.

*Colletti* may be distinguished on the crucial facts of that case as found by the court and we do not find similar factors present in the case at bar. We do not find that the testimony of the defendant in the instant case met the tests of exceptional circumstances or newly discovered evidence, or additional evidence, as prescribed by the supreme court in the *Hopkins, Armstrong* and *Holland* cases, and defendant has not demonstrated that the evidence sought to be introduced had become available for submission in connection with the motion. In the absence of such proof of additional evidence or newly discovered evidence the motion to relitigate should have been denied. (See *People v. Moore.* (1976), 37 Ill. App. 3d 777, 347 N.E.2d 331; see also *People v. Nelson* (1981), 97 Ill. App. 3d 964.) It cannot be said that the first motion is a rehearsal or dry run for a second motion and error was committed in granting said motion. See *People v. Douglas* (1981), 100 Ill. App. 3d 181, 426 N.E.2d 950.

Because of the conclusion reached we need not address the second issue raised by the parties for the reasons stated in *People v. Hopkins*, and

the judgment of the circuit court of Cook County is hereby reversed and said cause is remanded for a new trial.

Reversed and remanded with directions.

GOLDBERG and McGLOON, JJ., concur.