ROBBINS $v.$ CALIFORNIA

No. 80–148.   Argued April 27, 1981—Decided July 1, 1981

STEWART, J., announced the judgment of the Court and delivered an opinion, in which BRENNAN, WHITE, and MARSHALL, JJ., joined. BURGER, C. J., concurred in the judgment. POWELL, J., filed an opinion concurring in the judgment, *post*, p. 429. BLACKMUN, J., *post*, p. 436, REHNQUIST, J., *post*, p. 437, and STEVENS, J., *post*, p. 444, filed dissenting opinions.

*Marshall W. Krause* argued the cause for petitioner. With him on the briefs was *Joseph G. Baxter.*

*Ronald E. Niver,* Deputy Attorney General of California, argued the cause for respondent. With him on the brief were *George Deukmejian,* Attorney General, *Robert H. Philibosian,* Chief Assistant Attorney General, *Edward P. O'Brien,* Assistant Attorney General, and *Clifford K. Thompson, Jr.,* Deputy Attorney General.

*Deputy Solicitor General Frey* argued the cause for the United States as *amicus curiae* urging affirmance. With him on the brief were *Solicitor General McCree, Acting Assistant Attorney General Keeney, Joshua I. Schwartz,* and *John Fichter De Pue.*\*

---

\**Quin Denvir* and *Steffan Imhoff* filed a brief for the State Public Defender of California as *amicus curiae* urging reversal.

Justice Stewart announced the judgment of the Court and delivered an opinion, in which Justice Brennan, Justice White, and Justice Marshall joined.

I

On the early morning of January 5, 1975, California Highway Patrol officers stopped the petitioner's car—a 1966 Chevrolet station wagon—because he had been driving erratically. He got out of his vehicle and walked towards the patrol car. When one of the officers asked him for his driver's license and the station wagon's registration, he fumbled with his wallet. When the petitioner opened the car door to get out the registration, the officers smelled marihuana smoke. One of the officers patted down the petitioner, and discovered a vial of liquid. The officer then searched the passenger compartment of the car, and found marihuana as well as equipment for using it.

After putting the petitioner in the patrol car, the officers opened the tailgate of the station wagon, located a handle set flush in the deck, and lifted it up to uncover a recessed luggage compartment. In the compartment were a totebag and two packages wrapped in green opaque plastic.[1] The police unwrapped the packages; each one contained 15 pounds of marihuana.

The petitioner was charged with various drug offenses, his pretrial motion to suppress the evidence found when the

---

[1] A photograph was made of one of the packages, and it was later described as follows:

"The package visible in the photograph is apparently wrapped or boxed in an opaque material covered by an outer wrapping of transparent, cellophane-type plastic. (The photograph is not in color, and the 'green' plastic cannot be seen at all.) Both wrappings are sealed on the outside with at least one strip of opaque tape. As thus wrapped and sealed, the package roughly resembles an oversized, extra-long cigar box with slightly rounded corners and edges. It bears no legend or other written indicia supporting any inference concerning its contents." 103 Cal. App. 3d 34, 44, 162 Cal. Rptr. 780, 785 (Rattigan, J., dissenting).

packages were unwrapped was denied, and a jury convicted him. In an unpublished opinion, the California Court of Appeal affirmed the judgment in all relevant respects. This Court granted a writ of certiorari, vacated the Court of Appeal's judgment, and remanded the case for further consideration in light of *Arkansas* v. *Sanders,* 442 U. S. 753. 443 U. S. 903. On remand, the Court of Appeal again found the warrantless opening of the packages constitutionally permissible, since the trial court "could reasonably [have] conclude[d] that the contents of the packages could have been inferred from their outward appearance, so that appellant could not have held a reasonable expectation of privacy with respect to the contents." 103 Cal. App. 3d 34, 40, 162 Cal. Rptr. 780, 783. Because of continuing uncertainty as to whether closed containers found during a lawful warrantless search of an automobile may themselves be searched without a warrant, this Court granted certiorari. 449 U. S. 1109.

## II

The Fourth Amendment to the Constitution, which is made applicable to the States through the Fourteenth Amendment, establishes "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." This Court has held that a search is *per se* unreasonable, and thus violates the Fourth Amendment, if the police making the search have not first secured from a neutral magistrate a warrant that satisfies the terms of the Warrant Clause of the Fourth Amendment. See, *e. g., Katz* v. *United States,* 389 U. S. 347, 357; *Agnello* v. *United States,* 269 U. S. 20, 33. Although the Court has identified some exceptions to this warrant requirement, the Court has emphasized that these exceptions are "few," "specifically established," and "well-delineated." *Katz* v. *United States, supra,* at 357.

Among these exceptions is the so-called "automobile exception." See *Colorado* v. *Bannister,* 449 U. S. 1. In *Carroll*

v. *United States,* 267 U. S. 132, the Court held that a search
warrant is unnecessary "where there is probable cause to
search an automobile stopped on the highway; the car is
movable, the occupants are alerted, and the car's contents
may never be found again if a warrant must be obtained."
*Chambers* v. *Maroney,* 399 U. S. 42, 51. In recent years,
we have twice been confronted with the suggestion that this
"automobile exception" somehow justifies the warrantless
search of a closed container found inside an automobile.
Each time, the Court has refused to accept the suggestion.

In *United States* v. *Chadwick,* 433 U. S. 1, the Govern-
ment argued in part that luggage is analogous to motor vehi-
cles for Fourth Amendment purposes, and that the "automo-
bile exception" should thus be extended to encompass closed
pieces of luggage. The Court rejected the analogy and in-
sisted that the exception is confined to the special and pos-
sibly unique circumstances which were the occasion of its
genesis. First, the Court said that "[o]ur treatment of auto-
mobiles has been based in part on their inherent mobility,
which often makes obtaining a judicial warrant impractica-
ble." *Id.,* at 12. While both cars and luggage may be
"mobile," luggage itself may be brought and kept under the
control of the police.

Second, the Court acknowledged that "inherent mobility"
cannot alone justify the automobile exception, since the Court
has sometimes approved warrantless searches in which the
automobile's mobility was irrelevant. See *Cady* v. *Dom-
browski,* 413 U. S. 433, 441–442; *South Dakota* v. *Opperman,*
428 U. S. 364, 367. The automobile exception, the Court
said, is thus also supported by "the diminished expectation
of privacy which surrounds the automobile" and which arises
from the facts that a car is used for transportation and not
as a residence or a repository of personal effects, that a car's
occupants and contents travel in plain view, and that auto-
mobiles are necessarily highly regulated by government.
*United States* v. *Chadwick, supra,* at 12–13. No such dimin-

ished expectation of privacy characterizes luggage; on the contrary, luggage typically is a repository of personal effects, the contents of closed pieces of luggage are hidden from view, and luggage is not generally subject to state regulation.

In *Arkansas* v. *Sanders,* 442 U. S. 753, the State of Arkansas argued that the "automobile exception" should be extended to allow the warrantless search of everything found in an automobile during a lawful warrantless search of the vehicle itself. The Court rejected this argument for much the same reason it had rejected the Government's argument in *Chadwick.* Pointing out, first, that "[o]nce police have seized a suitcase, as they did here, the extent of its mobility is in no way affected by the place from which it was taken," the Court said that there generally "is no greater need for warrantless searches of luggage taken from automobiles than of luggage taken from other places." 442 U. S., at 763–764. Second, the Court saw no reason to believe that the privacy expectation in a closed piece of luggage taken from a car is necessarily less than the privacy expectation in closed pieces of luggage found elsewhere.

In the present case, the Court once again encounters the argument—made in the Government's brief as *amicus curiae*—that the contents of a closed container carried in a vehicle are somehow not fully protected by the Fourth Amendment. But this argument is inconsistent with the Court's decisions in *Chadwick* and *Sanders.* Those cases made clear, if it was not clear before, that a closed piece of luggage found in a lawfully searched car is constitutionally protected to the same extent as are closed pieces of luggage found anywhere else.

The respondent, however, proposes that the *nature* of a container may diminish the constitutional protection to which it otherwise would be entitled—that the Fourth Amendment protects only containers commonly used to transport "personal effects." By personal effects the respondent means property worn on or carried about the person or having some intimate relation to the person. In taking this position, the

respondent relies on numerous opinions that have drawn a distinction between pieces of sturdy luggage, like suitcases, and flimsier containers, like cardboard boxes. Compare, *e. g., United States* v. *Benson,* 631 F. 2d 1336 (CA8 1980) (leather totebag); *United States* v. *Miller,* 608 F. 2d 1089 (CA5 1979) (plastic portfolio); *United States* v. *Presler,* 610 F. 2d 1206 (CA4 1979) (briefcase); *United States* v. *Meier,* 602 F. 2d 253 (CA10 1979) (backpack); *United States* v. *Johnson,* 588 F. 2d 147 (CA5 1979) (duffelbag); *United States* v. *Stevie,* 582 F. 2d 1175 (CA8 1978), with *United States* v. *Mannino,* 635 F. 2d 110 (CA2 1980) (plastic bag inside paper bag); *United States* v. *Goshorn,* 628 F. 2d 697, 699 (CA1 1980) (" '[t]wo plastic bags, further in three brown paper bags, further in two clear plastic bags' "); *United States* v. *Gooch,* 603 F. 2d 122 (CA10 1979) (plastic bag); *United States* v. *Mackey,* 626 F. 2d 684 (CA9 1980) (paper bag); *United States* v. *Neumann,* 585 F. 2d 355 (CA8 1978) (cardboard box).

The respondent's argument cannot prevail for at least two reasons. First, it has no basis in the language or meaning of the Fourth Amendment. That Amendment protects people and their effects, and it protects those effects whether they are "personal" or "impersonal." The contents of Chadwick's footlocker and Sanders' suitcase were immune from a warrantless search because they had been placed within a closed, opaque container and because Chadwick and Sanders had thereby reasonably "manifested an expectation that the contents would remain free from public examination." *United States* v. *Chadwick, supra,* at 11. Once placed within such a container, a diary and a dishpan are equally protected by the Fourth Amendment.

Second, even if one wished to import such a distinction into the Fourth Amendment, it is difficult if not impossible to perceive any objective criteria by which that task might be accomplished. What one person may put into a suitcase, another may put into a paper bag. *United States* v. *Ross,*

210 U. S. App. D. C. 342, 655 F. 2d 1159 (1981) (en banc). And as the disparate results in the decided cases indicate, no court, no constable, no citizen, can sensibly be asked to distinguish the relative "privacy interests" in a closed suitcase, briefcase, portfolio, duffelbag, or box.

The respondent protests that footnote 13 of the *Sanders* opinion says that "[n]ot all containers and packages found by police during the course of a search will deserve the full protection of the Fourth Amendment." 442 U. S., at 764, n. 13. But the exceptions listed in the succeeding sentences of the footnote are the very model of exceptions which prove the rule: "Thus, some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance. Similarly, in some cases the contents of a package will be open to 'plain view,' thereby obviating the need for a warrant." *Id.*, at 764–765, n. 13. The second of these exceptions obviously refers to items in a container that is not closed. The first exception is likewise little more than another variation of the "plain view" exception, since, if the distinctive configuration of a container proclaims its contents, the contents cannot fairly be said to have been removed from a searching officer's view. The same would be true, of course, if the container were transparent, or otherwise clearly revealed its contents. In short, the negative implication of footnote 13 of the *Sanders* opinion is that, unless the container is such that its contents may be said to be in plain view, those contents are fully protected by the Fourth Amendment.

The California Court of Appeal believed that the packages in the present case fell directly within the second exception described in this footnote, since "[a]ny experienced observer could have inferred from the appearance of the packages that they contained bricks of marijuana." 103 Cal. App. 3d, at 40, 162 Cal. Rptr., at 783. The only evidence the court

cited to support this proposition was the testimony of one of the officers who arrested the petitioner. When asked whether there was anything about "these two plastic wrapped green blocks which attracted your attention," the officer replied, somewhat obscurely:

> "A. I had previous knowledge of transportation of such blocks. Normally contraband is wrapped this way, merely hearsay. I had never seen them before.
>
> "Q. You had heard contraband was packaged this way?
>
> "A. Yes." *Id.*, at 40, n. 2, 162 Cal. Rptr., at 783, n. 4.

This vague testimony certainly did not establish that marihuana is ordinarily "packaged this way." Expectations of privacy are established by general social norms, and to fall within the second exception of the footnote in question a container must so clearly announce its contents, whether by its distinctive configuration, its transparency, or otherwise, that its contents are obvious to an observer. If indeed a green plastic wrapping reliably indicates that a package could only contain marihuana, that fact was not shown by the evidence of record in this case.[2]

Although the two bricks of marihuana were discovered during a lawful search of the petitioner's car, they were inside a closed, opaque container. We reaffirm today that such a container may not be opened without a warrant, even if it is found during the course of the lawful search of an automobile. Since the respondent does not allege the presence of any circumstances that would constitute a valid exception

---

[2] As Judge Rattigan wrote in his dissenting opinion in the California Court of Appeal: "For all that I see, it could contain books, stationery, canned goods, or any number of other wholly innocuous items which might be heavy in weight. In fact, it bears a remarkable resemblance to an unlabelled carton of emergency highway flares that I bought from a store shelf and have carried in the trunk of my own automobile." 103 Cal. App. 3d, at 44, 162 Cal. Rptr., at 785.

to this general rule,[3] it is clear that the opening of the closed containers without a search warrant violated the Fourth and Fourteenth Amendments. Accordingly, the judgment of the California Court of Appeal is reversed.

*It is so ordered.*

THE CHIEF JUSTICE concurs in the judgment.

JUSTICE POWELL, concurring in the judgment.

The Court's judgment is justified, though not compelled, by the Court's opinion in *Arkansas* v. *Sanders,* 442 U. S. 753 (1979). Accordingly, I join the judgment. As the plurality today goes well beyond *Sanders* or any other prior case to establish a new "bright-line" rule, I cannot join its opinion.[1] It would require officers to obtain warrants in order to examine the contents of insubstantial containers in which no one had a reasonable expectation of privacy. The plurality's approach strains the rationales of our prior cases and imposes substantial burdens on law enforcement without vindicating any significant values of privacy. I nevertheless concur in the judgment because the manner in which the package at issue was carefully wrapped and sealed evidenced petitioner's expectation of privacy in its contents. As we have stressed

---

[3] In particular, it is not argued that the opening of the packages was incident to a lawful custodial arrest. Cf. *Chimel* v. *California,* 395 U. S. 752. See *Arkansas* v. *Sanders,* 442 U. S. 753, 764, n. 11. Further, the respondent does not argue that the petitioner consented to the opening of the packages.

[1] The plurality's "bright-line" rule would extend the Warrant Clause of the Fourth Amendment to every "closed, opaque container," without regard to size, shape, or whether common experience would suggest that the owner was asserting a privacy interest in the contents. The plurality would exempt from the broad reach of its rule only those "closed, opaque containers" where, because of shape or some other characteristic, the "contents may be said to be in plain view." In accordance with the plurality's usage I use the term "container" to include any and all packages, bags, boxes, tins, bottles, and the like.

in prior decisions, a central purpose of the Fourth Amendment is to safeguard reasonable expectations of privacy.

Having reached this decision on the facts of this case, I recognize—as the dissenting opinions find it easy to proclaim—that the law of search and seizure with respect to automobiles is intolerably confusing. The Court apparently cannot agree even on what it has held previously, let alone on how these cases should be decided. Much of this difficulty comes from the necessity of applying the general command of the Fourth Amendment to ever-varying facts; more may stem from the often unpalatable consequences of the exclusionary rule, which spur the Court to reduce its analysis to simple mechanical rules so that the constable has a fighting chance not to blunder.

This case and *New York* v. *Belton, post,* p. 454, decided today, involve three different Fourth Amendment questions that arise in automobile cases: (A) the scope of the search incident to arrest on the public highway; (B) whether officers must obtain a warrant when they have probable cause to search a particular container in which the suspect has a reasonable expectation of privacy; and (C) the scope of the "automobile exception" to the warrant requirement, which potentially includes all areas of the car and containers found therein. These issues frequently are intertwined, as the similar facts of these cases suggest: both involve the stop of an automobile upon probable cause, the arrest of the occupants, the search of the automobile, and the search of a personal container found therein. Nonetheless, the cases have been litigated and presented to us under entirely different theories. Intelligent analysis cannot proceed unless the issues are addressed separately. Viewing similar facts from entirely different perspectives need not lead to identical results.

## A

I have joined the Court's opinion in *Belton* because I concluded that a "bright-line" rule was necessary in the quite

different circumstances addressed there.[2] *Belton,* unlike this case, concerns only the exception to the warrant requirement for a search incident to arrest; contrary to JUSTICE STEVENS' implication, *post,* at 444, 447–448, 451, and n. 13, the courts below never found that the officer had probable cause to search the automobile. *Belton* presents the volatile and fluid situation of an encounter between an arresting officer and a suspect apprehended on the public highway. While *Chimel* v. *California,* 395 U. S. 752 (1969), determines in principle the scope of a warrantless search incident to arrest, practical necessity requires that we allow an officer in these circumstances to secure thoroughly the automobile without requiring him in haste and under pressure to make close calculations about danger to himself or. the vulnerability of evidence.

Any "bright-line" rule does involve costs. *Belton* trades marginal privacy of containers within the passenger area of an automobile for protection of the officer and of destructible evidence. The balance of these interests strongly favors the Court's rule. The occupants of an automobile enjoy only a limited expectation of privacy in the interior of the automobile itself. See *Almeida-Sanchez* v. *United States,* 413 U. S. 266, 279 (1973) (POWELL, J., concurring). This limited interest is diminished further when the occupants are placed under custodial arrest. Cf. *United States* v. *Robinson,* 414 U. S. 218, 237 (1973) (POWELL, J., concurring). Immediately preceding the arrest, the passengers have complete control over the entire interior of the automobile, and can place weapons or contraband into pockets or other containers as the officer approaches. Thus, practically speaking, it is difficult to justify varying degrees of protection for the general interior of the car and for the various containers found within. These

---

[2] The one significant factual difference is that *Belton* involved only the passenger compartment (the "interior") of an automobile, whereas this case involves search of the trunk.

considerations do not apply to the trunk of the car, which is not within the control of the passengers either immediately before or during the process of arrest.

## B

Although petitioner Robbins was arrested, this case was litigated only on the question whether the officers needed a warrant to open a sealed, opaquely wrapped container in the rear compartment of a station wagon. The plurality treats this situation as identical with that in *United States* v. *Chadwick,* 433 U. S. 1 (1977), and *Sanders, supra,* which addressed warrantless searches of a double-locked footlocker and personal luggage respectively. Thus, the plurality's opinion in this case concerns itself primarily with the kinds of containers requiring a warrant for their search when police have probable cause to search them, and where there has been no arrest. For reasons explained more fully below, I will share the plurality's assumption that the police had probable cause to search the container rather than the automobile generally. Viewing this as a "container case," I concur in the judgment.

*Chadwick* and *Sanders* require police to obtain a warrant to search the contents of a container only when the container is one that generally serves as a repository for personal effects or that has been sealed in a manner manifesting a reasonable expectation that the contents will not be open to public scrutiny. See *Chadwick, supra,* at 13; *Sanders,* 442 U. S., at 764. See, *e. g., United States* v. *Mannino,* 635 F. 2d 110, 114 (CA2 1980); *United States* v. *Goshorn,* 628 F. 2d 697, 700–701 (CA1 1980); *United States* v. *Mackey,* 626 F. 2d 684, 687–688 (CA9 1980); *United States* v. *Ross,* 210 U. S. App. D. C. 342, 356–362, 655 F. 2d 1159, 1173–1179 (1981) (en banc) (Tamm, J., dissenting). This resembles in principle the inquiry courts must undertake to determine whether a search violates the Fourth Amendment rights of a complaining party. See *Rakas* v. *Illinois,* 439 U. S. 128 (1978); *id.,* at 150–152 (POWELL, J.,

concurring). In each instance, "[t]he ultimate question . . . is whether one's claim to privacy from government intrusion is reasonable in light of the surrounding circumstances." *Id.,* at 152; see *Katz* v. *United States,* 389 U. S. 347 (1967).

The plurality's approach today departs from this basic concern with interests in privacy, and adopts a mechanical requirement for a warrant before police may search any closed container. Nothing in *Chadwick* or *Sanders* justifies this extreme extension of the warrant requirement. Indeed, the Court in *Sanders* explicitly foreclosed that reading:

> "There will be difficulties in determining which parcels taken from an automobile require a warrant for their search and which do not. Our decision in this case means only that a warrant generally is required before personal luggage can be searched and that the extent to which the Fourth Amendment applies to containers and other parcels depends not at all upon whether they are seized from an automobile." 442 U. S., at 765, n. 13.

While the plurality's blanket warrant requirement does not even purport to protect any privacy interest, it would impose substantial new burdens on law enforcement. Confronted with a cigarbox or a Dixie cup in the course of a probable-cause search of an automobile for narcotics, the conscientious policeman would be required to take the object to a magistrate, fill out the appropriate forms, await the decision, and finally obtain the warrant. Suspects or vehicles normally will be detained while the warrant is sought. This process may take hours, removing the officer from his normal police duties. Expenditure of such time and effort, drawn from the public's limited resources for detecting or preventing crimes, is justified when it protects an individual's reasonable privacy interests. In my view, the plurality's requirement cannot be so justified. The aggregate burden of procuring warrants whenever an officer has probable cause to search the most trivial

container may be heavy and will not be compensated by the advancement of important Fourth Amendment values. The sole virtue of the plurality's rule is simplicity.[3]

---

[3] The plurality overestimates the difficulties involved in determining whether a party has a reasonable expectation of privacy in a particular container. Many containers, such as personal luggage, are "inevitably associated with the expectation of privacy." *Arkansas* v. *Sanders,* 442 U. S. 753, 762 (1979). Many others, varying from a plastic cup to the ubiquitous brown paper grocery sack, consistently lack such an association. In the middle are containers, such as cardboard boxes and laundry bags, that may be used, although imperfectly, as repositories of personal effects, but often are not. As to such containers, I would adopt the view of Chief Judge Coffin:

"[W]e disagree that the mere possibility of such use leads to the conclusion that such containers are 'inevitably' associated with an expectation of privacy. The many and varied uses of these containers that entail no expectation of privacy militate against applying a presumption that a warrantless search of such a container violates the Fourth Amendment." *United States* v. *Goshorn,* 628 F. 2d 697, 700 (CA1 1980).

When confronted with the claim that police should have obtained a warrant before searching an ambiguous container, a court should conduct a hearing to determine whether the defendant had manifested a reasonable expectation of privacy in the contents of the container. *See id.,* at 701. Relevant to such an inquiry should be the size, shape, material, and condition of the exterior, the context within which it is discovered, and whether the possessor had taken some significant precaution, such as locking, securely sealing or binding the container, that indicates a desire to prevent the contents from being displayed upon simple mischance. A prudent officer will err on the side of respecting ambigous assertions of privacy, see *Rakas* v. *Illinois,* 439 U. S. 128, 152, n. 1 (1978) (POWELL, J., concurring), and a realistic court seldom should second-guess the good-faith judgment of the officer in the field when the public consequently must suffer from the suppression of probative evidence, cf. *Brown* v. *Illinois,* 422 U. S. 590, 611–612 (1975) (POWELL, J., concurring).

In this case, petitioner, by securely wrapping and sealing his package, had manifested a desire that the public not casually observe the contents. See *ante,* at 422, n. 1. Our society's traditional respect for the privacy of locked or sealed containers confirms the reasonableness of this expectation. See *Ex parte Jackson,* 96 U. S. 727, 733 (1878) (warrant required for postal inspectors to open sealed packages sent through mail). See also *United States* v. *Van Leeuwen,* 397 U. S. 249 (1970).

## C

The dissenters argue, with some justice, that the controlling question should be the scope of the automobile exception to the warrant requirement. In their view, when the police have probable cause to search an automobile, rather than only to search a particular container that fortuitously is located in it, the exigencies that allow the police to search the entire automobile without a warrant support the warrantless search of every container found therein. See *post,* at 451, and n. 13 (STEVENS, J., dissenting). This analysis is entirely consistent with the holdings in *Chadwick* and *Sanders,* neither of which is an "automobile case," because the police there had probable cause to search the double-locked footlocker and the suitcase respectively before either came near an automobile. See *Chadwick,* 433 U. S., at 11; *Sanders,* 442 U. S., at 761; see also *id.,* at 766 (BURGER, C. J., concurring). Adoption of the dissenters' view would require, however, rejection of a good deal of the reasoning in the latter case.

Resolving this case by expanding the scope of the automobile exception is attractive not so much for its logical virtue, but because it may provide ground for agreement by a majority of the presently fractured Court on an approach that would give more specific guidance to police and courts in this recurring situation—one that has led to incessant litigation. I note, however, that this benefit would not be realized fully, as courts may find themselves deciding when probable cause ripened, or whether suspicion focused on the container or on the car in which it traveled.

The parties have not pressed this argument in this case and it is late in the Term for us to undertake *sua sponte* reconsideration of basic doctrines. Given these constraints, I adhere to statements in *Sanders* that the fact that the container was seized from an automobile is irrelevant to the question whether a warrant is needed to search its contents. Some future case affording an opportunity for more thorough con-

sideration of the basic principles at risk may offer some better, if more radical, solution to the confusion that infects this benighted area of the law.[4]

JUSTICE BLACKMUN, dissenting.

I must dissent for the reasons stated in my respective writings in *United States* v. *Chadwick,* 433 U. S. 1, 17 (1977), and *Arkansas* v. *Sanders,* 442 U. S. 753, 768 (1979). I also agree with much of what JUSTICE REHNQUIST says, *post,* at 439–443, in his dissenting opinion in the present case. The anticipated confusion that *Chadwick* and *Sanders* spawned for the Nation's trial and appellate courts is well illustrated by JUSTICE STEWART's listing, *ante,* at 425–426, of cases decided by Federal Courts of Appeals since *Chadwick* was announced in 1977.

The decision in the present case at least has the merit of a "bright line" rule that should serve to eliminate the opaqueness and to dissipate some of the confusion. See 442 U. S., at 771–772. Nonetheless, under today's holding, an arresting officer will still be forced, despite a concededly lawful search of the automobile, to go to the magistrate, whether near or far, for the search warrant inevitably to be issued when the facts are like those presented here. And only time will tell whether the "test," *ante,* at 427, for determining whether a package's exterior "announce[s] its contents" will lead to a new stream of litigation.

I continue to think the Court is in error and that it would have been better, see 442 U. S., at 772, "to adopt a clear-cut rule to the effect that a warrant should not be required to seize and search any personal property found in an automobile that may in turn be seized and searched without a war-

---

[4] We have an institutional responsibility not only to respect *stare decisis* but also to make every reasonable effort to harmonize our views on constitutional questions of broad practical application.

rant pursuant to *Carroll* [v. *United States,* 267 U. S. 132 (1925),] and *Chambers* [v. *Maroney,* 399 U. S. 42 (1970)]."

JUSTICE REHNQUIST, dissenting.

I have previously stated why I believe the so-called "exclusionary rule" created by this Court imposes a burden out of all proportion to the Fourth Amendment values which it seeks to advance by seriously impeding the efforts of the national, state, and local governments to apprehend and convict those who have violated their laws. See *California* v. *Minjares,* 443 U. S. 916 (1979) (REHNQUIST, J., joined by BURGER, C. J., dissenting from the denial of a stay). I have in no way abandoned those views, but believe that the plurality opinion of JUSTICE STEWART announcing the judgment of the Court in the present case compounds the evils of the "exclusionary rule" by engrafting subtleties into the jurisprudence of the Fourth Amendment itself that are neither required nor desirable under our previous decisions. As Justice Harlan stated in his concurring opinion in *Coolidge* v. *New Hampshire,* 403 U. S. 443, 490–491 (1971):

> "State and federal law enforcement officers and prosecutorial authorities must find quite intolerable the present state of uncertainty, which extends even to such an everyday question as the circumstances under which police may enter a man's property to arrest him and seize a vehicle believed to have been used during the commission of a crime.
>
> "I would begin [the] process of re-evaluation by overruling *Mapp* v. *Ohio,* 367 U. S. 643 (1961), and *Ker* v. *California,* 374 U. S. 23 (1963). . . .
>
> "Until we face up to the basic constitutional mistakes of *Mapp* and *Ker,* no solid progress in setting things straight in search and seizure law will, in my opinion, occur."

The 10 years which have intervened since Justice Harlan

made this statement have only tended to confirm its correctness.

The harm caused by the exclusionary rule is compounded by the judicially created preference for a warrant as indicating satisfaction of the reasonableness requirement of the Fourth Amendment. It is often forgotten that nothing in the Fourth Amendment itself requires that searches be conducted pursuant to warrants. The terms of the Amendment simply mandate that the people be secure from unreasonable searches and seizures, and that any warrants which *may* issue shall only issue upon probable cause: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Not only has historical study "suggested that in emphasizing the warrant requirement over the reasonableness of the search the Court has 'stood the fourth amendment on its head' from a historical standpoint," *Coolidge, supra,* at 492 (Harlan, J., concurring) (quoting T. Taylor, Two Studies in Constitutional Interpretation 23–24 (1969)), but the Court has failed to appreciate the impact of its decisions, not mandated by the Fourth Amendment, on law enforcement. Courts, including this Court, often make the rather casual assumption that police are not substantially frustrated in their efforts to apprehend those whom they have probable cause to arrest or to gather evidence of crime when they have probable cause to search by the judicially created preference for a warrant, apparently assuming that the typical case is one in which an officer can make a quick half mile ride to the nearest precinct station in an urban area to obtain such a warrant. See, *e. g., Steagald* v. *United States,* 451 U. S. 204, 222 (1981). But this casual assumption simply does not fit the realities of sparsely populated "cow counties" located in some of the Southern and Western States, where at least

apocryphally the number of cows exceed the number of people, and the number of square miles in the county may exceed 10,000 and the nearest magistrate may be 25 or even 50 miles away. The great virtue of the opinion in *Wolf* v. *Colorado,* 338 U. S. 25 (1949), was that it made allowance for these vast diversities between States; unfortunately such an approach to the Fourth Amendment in the true spirit of federalism was, as Justice Harlan observed, rejected in *Mapp* v. *Ohio,* 367 U. S. 643 (1961).

Recent developments have cast further doubt on the emphasis on a warrant as opposed to the reasonableness of the search. In *Shadwick* v. *City of Tampa,* 407 U. S. 345 (1972), the Court ruled that clerks of the Municipal Court of the city of Tampa, Fla., not trained in the law, are "neutral and detached magistrates" who may issue warrants which satisfy the Warrant Clause of the Fourth Amendment. And in *Franks* v. *Delaware,* 438 U. S. 154 (1978), the Court held that a defendant can go behind a warrant and attack its validity on a motion to suppress. In emphasizing the warrant requirement the Court has therefore not only erected an edifice without solid foundation but also one with little substance.

Even aside from these general observations on the warrant requirement, the case we decide today falls within what has been and should continue to be an exception to that requirement—the automobile exception. In *Cady* v. *Dombrowski,* 413 U. S. 433, 439–440 (1973), we explained that one class of cases which constitutes "at least a partial exception to this general rule [of requiring a warrant] is automobile searches. Although vehicles are 'effects' within the meaning of the Fourth Amendment, 'for the purposes of the Fourth Amendment there is a constitutional difference between houses and cars.' *Chambers* v. *Maroney,* 399 U. S. 42, 52 (1970). See *Carroll* v. *United States,* 267 U. S. 132, 153–154 (1925)." We also stated in *Cady:*

> "[T]he application of Fourth Amendment standards, originally intended to restrict only the Federal Govern-

ment, to the States presents some difficulty when searches of automobiles are involved. The contact with vehicles by federal law enforcement officers usually, if not always, involves the detection or investigation of crimes unrelated to the operation of a vehicle. Cases such as *Carroll* v. *United States, supra,* and *Brinegar* v. *United States,* 338 U. S. 160 (1949), illustrate the typical situations in which federal officials come into contact with and search vehicles. In both cases, members of a special federal unit charged with enforcing a particular federal criminal statute stopped and searched a vehicle when they had probable cause to believe that the operator was violating that statute.

"As a result of our federal system of government, however, state and local police officers, unlike federal officers, have much more contact with vehicles for reasons related to the operation of vehicles themselves. All States require vehicles to be registered and operators to be licensed. States and localities have enacted extensive and detailed codes regulating the condition and manner in which motor vehicles may be operated on public streets and highways." *Id.,* at 440–441.

I would not draw from the language of either *Cady* or of *South Dakota* v. *Opperman,* 428 U. S. 364 (1976), the conclusion which the plurality draws today that " 'inherent mobility' cannot alone justify the automobile exception, since the Court has sometimes approved warrantless searches in which the automobile's mobility was irrelevant." *Ante,* at 424. Logically, it seems to me that the conclusion to be drawn from *Cady* and *Opperman* is that one need *not* demonstrate that a *particular* automobile was capable of being moved, but that automobiles *as a class* are inherently mobile, and a defendant seeking to suppress evidence obtained from an automobile should not be heard to say that this particular automobile had broken down, was in a parking lot under the supervision

of the police, or the like. Thus, I continue to adhere to the view expressed by JUSTICE BLACKMUN:

> "If 'contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant,' *Carroll* v. *United States,* 267 U. S. 132, 153 (1925), then, in my view, luggage and similar containers found in an automobile may be searched for contraband without a warrant. The luggage, like the automobile transporting it, is mobile. And the expectation of privacy in a suitcase found in the car is probably not significantly greater than the expectation of privacy in a locked glove compartment.

> . . . . .

> "In my view, it would be better to adopt a clear-cut rule to the effect that a warrant should not be required to seize and search any personal property found in an automobile that may in turn be seized and searched without a warrant pursuant to *Carroll and Chambers."* *Arkansas* v. *Sanders,* 442 U. S. 753, 769, 772 (1979) (BLACKMUN, J., dissenting).

The proper application of the automobile exception would uphold the search conducted by the California Highway Patrol officers in this case inasmuch as the plurality acknowledges that the officers could constitutionally open the tailgate of the station wagon and then open the car's luggage compartment. *Ante,* at 428.

The plurality, however, concludes that the opening of the two plastic garbage bags which the officers found in the luggage compartment is unconstitutional. In so doing, the plurality relies on its earlier decision in *Arkansas* v. *Sanders, supra,* and rejects the argument that the search of the garbage bags should, at a minimum, fall within the exception noted in footnote 13 of the *Sanders* opinion. There, the Court had explained:

> "Not all containers and packages found by police dur-

ing the course of a search will deserve the full protection of the Fourth Amendment. Thus, some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance. Similarly, in some cases the contents of a package will be open to 'plain view,' thereby obviating the need for a warrant. See *Harris* v. *United States,* 390 U. S. 234, 236 (1968) (*per curiam*)." 442 U. S., at 764–765, n. 13.

It seems to me that the search conducted by the Highway Patrol officers falls squarely within the above exception. This is revealed by an examination of the events which prompted the search of the luggage compartment in the first place—events which are conspicuously absent from the recitation of the facts in the plurality opinion. Prior to opening the tailgate of the car, the Highway Patrol officers had already discovered marihuana in the passenger compartment of the car. While the officers were retrieving this marihuana and other drug paraphernalia from the front of the car, petitioner stated: "What you are looking for is in the back." Only then did an officer open the luggage compartment of the station wagon and discover the two plastic garbage bags being used to wrap the blocks of marihuana. One of the officers then testified that he was aware that contraband was often wrapped in this fashion—a fact of which all those who watch the evening news are surely well aware. Given these factors, particularly the petitioner's statement, it seems to me that petitioner could have no reasonable expectation of privacy in the contents of the garbage bags. Surely, given all the circumstances, the contents of the garbage bags "could be inferred from their outward appearance."

The present case aptly illustrates the problems inherent in the Fourth Amendment analysis adopted by the Court in the past two decades. Rather than apply the automobile excep-

tion to a situation such as the present one, the Court in *United States* v. *Chadwick*, 433 U. S. 1 (1977), and *Sanders*, *supra*, attempted to limit that exception so as not to include certain, but not all, containers found within an automobile. Apparently, the plurality today decides that distinguishing between containers found in a car is too difficult a task and accordingly denudes the language found in footnote 13 of *Sanders* of most of its meaning. It does so evidently in search of a workable rule to govern automobile searches. I seek such a workable rule as well, but unlike the plurality I feel that such a rule cannot be found as long as the Court continues in the direction in which it is headed. Instead, I would return to the rationale of *Carroll* and *Chambers* and hold that a warrant should not be required to seize and search any personal property found in an automobile that may in turn be constitutionally seized and searched without a warrant. I would not abandon this reasonably "bright line" in search of another.

But I think that probably any search for "bright lines" short of overruling *Mapp* v. *Ohio* is apt to be illusory. Our entire profession is trained to attack "bright lines" the way hounds attack foxes. Acceptance by the courts of arguments that one thing is the "functional equivalent" of the other, for example, soon breaks down what might have been a bright line into a blurry impressionistic pattern.

If city court clerks who are not trained in the law satisfy the warrant requirement of the Fourth and Fourteenth Amendments, and if a defendant may attack the validity of a warrant on a motion to suppress, it seems to me that little is lost in the way of the "core values" of the Fourth Amendment as made applicable to the States by the Fourteenth if *Mapp* v. *Ohio* is overruled. This will not establish a bright line except to the extent that it makes clear that the exclusionary rule is not applicable to the States. And it will leave to the Federal Government, with its generally more highly trained law enforcement personnel, the problems of wrestling with this

Court's twisting and turning as it makes decisional law applying the Fourth Amendment, rather than forcing the 50 States, with their widely varying conditions and greater traditional responsibility for prevention of serious crime, to engage in the burdensome and frequently futile efforts which are necessary to predict the "correct" result in a particular case.

JUSTICE STEVENS, dissenting.

It is quite clear to most of us that this case and *New York* v. *Belton, post,* p. 454, should be decided in the same way.[1] Both cases involve automobile searches. In both cases, the automobiles had been lawfully stopped on the highway, the occupants had been lawfully arrested, and the officers had probable cause to believe that the vehicles contained contraband. In my opinion, the "automobile exception" to the warrant requirement therefore provided each officer the authority to make a thorough search of the vehicle—including the glove compartment, the trunk, and any containers in the vehicle that might reasonably contain the contraband.

Such was the state of the law prior to the Court's discursive writing in *Arkansas* v. *Sanders,* 442 U. S. 753.[2] Be-

---

[1] JUSTICE BLACKMUN, JUSTICE REHNQUIST, and I would uphold the searches in both cases; JUSTICE BRENNAN, JUSTICE WHITE, and JUSTICE MARSHALL would invalidate both searches. Only THE CHIEF JUSTICE, JUSTICE STEWART, and JUSTICE POWELL reach the curious conclusion that a citizen has a greater privacy interest in a package of marihuana enclosed in a plastic wrapper than in the pocket of a leather jacket.

[2] Prior to the Court's decision in *United States* v. *Chadwick,* 433 U. S. 1, courts routinely relied on the automobile exception to uphold the search of a container found in a car. The court in *United States* v. *Soriano,* 497 F. 2d 147, 149 (CA5 1974), cited *Chambers* v. *Maroney,* 399 U. S. 42, and stated:

"And though it is true that the Court spoke of an automobile while we treat of containers in or just removed from one, the principle is not different. The officer who arrested Soriano and his companions indisputably had probable cause to believe that the vehicle contained contraband, a circumstance justifying the initial incursion into the trunk. Under

cause—as THE CHIEF JUSTICE cogently demonstrated in his separate opinion in *Sanders*—the actual holdings in both *Sanders* and *United States* v. *Chadwick,* 433 U. S. 1, are entirely consistent with that view of the law, I would apply it in this case. *Sanders* and *Chadwick* are both plainly distinguishable from this case because neither case truly involved the automobile exception.[3] In *Chadwick,* federal

---

established law in this circuit and elsewhere, this justification encompassed the search of containers in the vehicle which could reasonably be employed in the illicit carriage of the contraband."

See also *United States* v. *Anderson,* 500 F. 2d 1311, 1315 (CA5 1974); *United States* v. *Evans,* 481 F. 2d 990, 993–994 (CA9 1973). Indeed, in many cases it apparently never occurred to defendants challenging the validity of automobile searches or the courts considering such challenges that a search of a suitcase or other container located in an automobile presented a different question than the search of the car itself. See, *e. g., United States* v. *Bowman,* 487 F. 2d 1229 (CA10 1973); *United States* v. *Garner,* 451 F. 2d 167 (CA6 1971); *United States* v. *Chapman,* 474 F. 2d 300 (CA5 1973), cert. denied, 414 U. S. 835; *State* v. *Hearn,* 340 So. 2d 1365 (La. 1976); *State* v. *Lee,* 113 N. H. 313, 307 A. 2d 827 (1973); Cf. *State* v. *Warren,* 283 So. 2d 740 (La. 1973). Even after *Chadwick* was decided, courts continued to apply the automobile exception to uphold searches of containers found in cars and rejected the argument that *Chadwick* constituted a limitation on the automobile exception. See *United States* v. *Milhollan,* 599 F. 2d 518, 525–527 (CA3 1979), cert. denied, 444 U. S. 909; *United States* v. *Finnegan,* 568 F. 2d 637, 641 (CA9 1977); *United States* v. *Ochs,* 595 F. 2d 1247 (CA2 1979), cert. denied, 444 U. S. 955. But see *United States* v. *Johnson,* 588 F. 2d 147, 150–152, and n. 6 (CA5 1979) (repudiating *United States* v. *Soriano, supra).*

[3] As THE CHIEF JUSTICE pointed out in his opinion concurring in the judgment in *Sanders:*

"The breadth of the Court's opinion and its repeated references to the 'automobile' from which respondent's suitcase was seized at the time of his arrest, however, might lead the reader to believe—as the dissenters apparently do—that this case involves the 'automobile' exception to the warrant requirement. See *ante,* at 762–765, and n. 14. It does not. Here, as in *Chadwick,* it was the *luggage* being transported by respondent at the time of the arrest, not the automobile in which it was being carried, that was the suspected locus of the contraband. The relationship between the

narcotic agents had probable cause to search a footlocker which was seized immediately after being placed in the trunk of a car. In *Sanders,* the officers had probable cause to believe a particular piece of luggage contained contraband before it was placed in the trunk of a taxicab. The officers, however, had no reason to search the vehicle in either case, and no right to arrest the driver in *Sanders.* The issue in *Chadwick* and *Sanders* would have been exactly the same if the officers had apprehended the suspects before they placed the footlocker in the trunk of the car in *Chadwick* or before they hailed the taxi in *Sanders.*[4] The officers' duty to obtain a warrant in both cases could not be evaded by simply waiting until the luggage was placed in a vehicle.

I therefore believe that neither *Sanders* nor *Chadwick* precludes application of the automobile exception to authorize

---

automobile and the contraband was purely coincidental, as in *Chadwick.* The fact that the suitcase was resting in the trunk of the automobile at the time of respondent's arrest does not turn this into an 'automobile' exception case. The Court need say no more.

"This case simply does not present the question of whether a warrant is required before opening luggage when the police have probable cause to believe contraband is located *somewhere* in the vehicle, but when they do *not* know whether, for example, it is inside a piece of luggage in the trunk, in the glove compartment, or concealed in some part of the car's structure." 442 U. S., at 767.

[4] Again, as pointed out by THE CHIEF JUSTICE:

"Because the police officers had probable cause to believe that respondent's green suitcase contained marihuana before it was placed in the trunk of the taxicab, their duty to obtain a search warrant before opening it is clear under *United States* v. *Chadwick,* 433 U. S. 1 (1977). The essence of our holding in *Chadwick* is that there is a legitimate expectation of privacy in the contents of a trunk or suitcase accompanying or being carried by a person; that expectation of privacy is not diminished simply because the owner's arrest occurs in a public place. Whether arrested in a hotel lobby, an airport, a railroad terminal, or on a public street, as here, the owner has the right to expect that the contents of his luggage will not, without his consent, be exposed on demand of the police." *Id.,* at 766–767.

searches of containers found in cars that police have probable cause to search. Moreover, neither the law as it had developed before *Sanders,* nor the holding in *Sanders,* requires the Court to draw distinctions among different kinds of containers. JUSTICE BLACKMUN is surely correct in his forceful demonstration that the Fourth Amendment cannot differentiate between "an orange crate, a lunch bucket, an attaché case, a duffelbag, a cardboard box, a backpack, a totebag, and a paper bag." *Arkansas* v. *Sanders,* 442 U. S., at 772 (dissenting opinion). Except for the author of the *Sanders* dictum,[5] all Members of the Court wisely avoid the pitfalls of such an approach; unfortunately, however, instead of adhering to the simple view that when a warrantless search is within the automobile exception the entire vehicle may be searched, the Court today simultaneously moves too far in opposite directions in these two cases. In *Robbins* v. *California* the plurality and JUSTICE POWELL forbid a reasonable search of a container found in the functional equivalent of a trunk, and in *New York* v. *Belton* the Court authorizes unreasonable searches of vehicles and containers without probable cause to believe that contraband will be found. I disagree with both of these new approaches and would decide both cases by a consistent application of the automobile exception.

## I

Although a routine application of the automobile exception would provide an adequate basis for upholding the search in this case, the plurality instead quixotically concludes that notwithstanding an officer's probable cause to believe that

---

[5] See POWELL, J., concurring in the judgment, *ante,* p. 429. If containers can be classified on the basis of the owner's expectations of privacy, see *ibid.,* it would seem rather clear to me that a brick of marihuana wrapped in green plastic would fall in the nonprivate category. I doubt if many dealers in this substance would be very comfortable carrying around such packages in plain view.

there is marihuana in a recessed luggage compartment in a station wagon, a green opaque plastic covering provides the contraband with a mantle of constitutional protection. Instead of repudiating the unnecessarily broad dictum that it employed in *Sanders*—a course the Court recognized as necessary in other cases this Term [6]—the plurality engages in an unprecedented and unnecessary narrowing of the automobile exception.

In *Chambers* v. *Maroney*, 399 U. S. 42, the Court reaffirmed the automobile exception established a half century earlier in *Carroll* v. *United States*, 267 U. S. 132, and upheld the warrantless search of an automobile on probable cause.[7] The "exception" recognized in *Carroll* and *Chambers*, however, applies merely to the requirement that police seek a warrant from a magistrate before conducting a search of places or things protected by the Fourth Amendment. The scope of

---

[6] Compare *McDaniel* v. *Sanchez*, 452 U. S. 130, with *East Carroll Parish School Board* v. *Marshall*, 424 U. S. 636, see especially STEWART, J., dissenting in *McDaniel, supra,* at 154; see also *Donovan* v. *Dewey*, 452 U. S. 594, 609 (STEWART, J., dissenting); *id.,* at 606 (STEVENS, J., concurring).

[7] The *Chambers* Court indicated that the automobile exception is a recognition of the fact that searches of automobiles generally involve exigent circumstances:

"In enforcing the Fourth Amendment's prohibition against unreasonable searches and seizures, the Court has insisted upon probable cause as a minimum requirement for a reasonable search permitted by the Constitution. As a general rule, it has also required the judgment of a magistrate on the probable-cause issue and the issuance of a warrant before a search is made. Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search. *Carroll, supra,* holds a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Hence an immediate search is constitutionally permissible." 399 U. S., at 51.

The *Chambers* Court held that if a car could be searched on the scene of an arrest, it could also be searched after being taken to the station house.

any search that is within the exception should be just as broad as a magistrate could authorize by warrant if he were on the scene; the automobile exception to the warrant requirement therefore justifies neither more nor less than could a magistrate's warrant. If a magistrate issued a search warrant for an automobile, and officers in conducting the search authorized by the warrant discovered a suitcase in the car, they surely would not need to return to the magistrate for another warrant before searching the suitcase.[8] The fact that the marihuana found in petitioner's car was wrapped in opaque green plastic does not take the search out of the automobile exception.[9] Accordingly, the search conducted here was proper, and the judgment of the California Court of Appeal should be affirmed.

## II

In *Belton, post,* p. 454, instead of relying on the automobile exception to uphold the search of respondent's jacket pocket, the Court takes an extraordinarily dangerous detour to reach the same result by adopting an admittedly new rationale ap-

---

[8] Similarly, if a magistrate issues a warrant for the search of a house, police executing that warrant clearly need not obtain a separate warrant for the search of a suitcase found in the house, so long as the things to be seized could reasonably be found in such a suitcase.

[9] Of course, a proper application of the automobile exception will uphold a search of a container located in a car only if the police have probable cause to search the entire car. If, as in *Sanders,* the police have probable cause only as to a suitcase, and not as to the entire car, then the automobile exception is inapplicable and a warrant is required unless some other exigency exists. Thus police would not be able to avoid a warrant requirement simply by waiting for the suspect to place an object in a car and then invoking the automobile exception. If, however, the occupants of a car have an opportunity to take contraband out of a suitcase and secrete it somewhere else in a car, see *Sanders,* 442 U. S., at 768, 770, n. 3 (BLACKMUN, J., dissenting), then I would conclude that police have probable cause to search the entire car, including the suitcase, without a warrant.

plicable to every "lawful custodial arrest" of the occupant of an automobile. ﹐

The Court's careful and repeated use of the term "lawful custodial arrest" [10] seems to imply that a significant distinction between custodial arrests and ordinary arrests exists. I am familiar with the distinction between a "stop," see, e. g., *Terry* v. *Ohio,* 392 U. S. 1, and an "arrest," but I am not familiar with any difference between custodial arrests and any other kind of arrest. It is, of course, true that persons apprehended for traffic violations are frequently not required to accompany the arresting officer to the police station before they are permitted to leave on their own recognizance or by using their driver's licenses as a form of bond. It is also possible that state law or local regulations may in some cases prohibit police officers from taking persons into custody for violation of minor traffic laws. As a matter of constitutional law, however, any person lawfully arrested for the pettiest misdemeanor may be temporarily placed in custody.[11] In-

---

[10] See *post,* at 455, 458, 459, 460, 461, 462, 463, and the quotation from *United States* v. *Robinson,* 414 U. S. 218, *post,* at 461.

[11] JUSTICE STEWART apparently believes that the Fourth and Fourteenth Amendments might provide some impediment to police taking a defendant into custody for violation of a "minor traffic offense." See *Gustafson* v. *Florida,* 414 U. S. 260, 266 (STEWART, J. concurring). Although I agree that a police officer's authority to restrain an individual's liberty should be limited in the context of stops for routine traffic violations, see *Pennsylvania* v. *Mimms,* 434 U. S. 106, 115 (STEVENS, J., dissenting), the Court has not directly considered the question whether "there are some constitutional limits upon the use of 'custodial arrests' as the means for invoking the criminal process when relatively minor offenses are involved." See 2 W. LaFave, Search and Seizure § 5.2, p. 290 (1978); see also *id.,* § 5.1, pp. 256–260, § 5.2, pp. 281–291. To the extent that the Court has considered the scope of an officer's authority in making routine traffic stops, the Court has not imposed constitutional restrictions on that authority. See *Pennsylvania* v. *Mimms, supra; United States* v. *Robinson, supra; Gustafson* v. *Florida, supra.* Thus the Court may be assuming that its new rule will be limited by a constitutional restriction that does not exist.

deed, as the Court has repeatedly held, every arrest is a seizure of the person within the meaning of the Fourth Amendment. The rule of constitutional law the Court fashions today therefore potentially applies to every arrest of every occupant of an automobile.[12]

After the vehicle in which respondent was riding was stopped, the officer smelled marihuana and thereby acquired probable cause to believe that the vehicle contained contraband.[13] A thorough search of the car was therefore reasonable. But if there were no reason to believe that anything more than a traffic violation had occurred, I should think it palpably unreasonable to require the driver of a car to open

[12] After today, the driver of a vehicle stopped for a minor traffic violation must look to state law for protection from unreasonable searches. Such protection may come from two sources. Statutory law may provide some protection. Legislatures in some States permit officers to take traffic violators into custody only for certain violations. See, e. g., Mich. Comp. Laws §§ 257.727–257.728 (1979). In some States, however, the police officer has the discretion to make a "custodial arrest" for violation of any motor vehicle law. See, e. g., Iowa Code §§ 321.482, 321.485 (1980); Kan. Stat. Ann. § 8–2105 (1975). See also Tex. Rev. Civ. Stat. Ann., Art. 6701d, §§ 147–153 (Vernon 1977); Wallace v. State, 467 S. W. 2d 608, 609–610 (Tex. Crim. App. 1971); Tores v. State, 518 S. W. 2d 378 (Tex. Crim. App. 1975) (officer may take driver into custody for any traffic offense except speeding). Additionally, the failure to produce a satisfactory bond will often justify "detention and custodial arrest." People v. Mathis, 55 Ill. App. 3d 680, 684, 371 N. E. 2d 245, 249 (1977). See also Y. Kamisar, W. LaFave, & J. Israel, Modern Criminal Procedure 402, n. a (Supp. 4th ed. 1980). Given the incomplete protection afforded by statutory law, drivers in many States will have to persuade state supreme courts to interpret their state constitution's equivalent to the Fourth Amendment to prohibit the unreasonable searches permitted by the Court here.

[13] The conclusion that the officers had probable cause to search the car is supported by Robbins, in which the plurality seems to assume the existence of probable cause on the basis of similar facts. Cf. United States v. Bowman, 487 F. 2d 1229, 1231 (CA10 1973); United States v. Campos, 471 F. 2d 296 (CA9 1972).

his briefcase or his luggage for inspection by the officer.[14] The driver so compelled, however, could make no constitutional objection to a decision by the officer to take the driver into custody and thereby obtain justification for a search of the entire interior of the vehicle. Indeed, under the Court's new rule, the arresting officer may find reason to follow that procedure whenever he sees an interesting looking briefcase or package in a vehicle that has been stopped for a traffic violation. That decision by a police officer will therefore provide the constitutional predicate for broader vehicle searches than any neutral magistrate could authorize by issuing a warrant.

The Court's reasoning, which will lead to a massive broadening of the automobile exception, is particularly unfortunate because that reasoning is not necessary to the decision. By taking the giant step of permitting searches in the absence of probable cause, the Court misses the shorter step of relying on the automobile exception to uphold the search.[15] By taking this shorter step the Court could have adhered to the fundamental distinction between a search that a magistrate

---

[14] It would seem equally unreasonable to require a driver to open the trunk of his car, which the Court would not permit, and to require a driver to open luggage located in the back of a station wagon, which would be permissible under the Court's rule. The Court attempts to justify the search in *Belton* on the basis of the officer's safety, but JUSTICE BRENNAN, dissenting, *post*, at 466–469, has forcefully demonstrated the inadequacy of that rationale.

[15] It is true that the State in *Belton* did not argue that the automobile exception justified the search of respondent's jacket pocket. Nevertheless, just as the admission of a piece of evidence will be affirmed if any valid reason for admission existed—even if the one relied upon by the trial judge was not valid—I would uphold the admission of this evidence if any theory justifying the search is valid. This is particularly appropriate given the State's understandable reluctance to argue an issue that many courts have considered to be foreclosed by *Sanders*. See, *e. g., United States* v. *Rigales,* 630 F. 2d 364 (CA5 1980); *United States* v. *MacKay,* 606 F. 2d 264 (CA9 1979); *State* v. *Jenkins,* 619 P. 2d 108 (Haw. 1980).

could authorize because it is based on probable cause and one that is not so justified under that standard. Although I am persuaded that the Court has reached the right result, its opinion misconstrues the Fourth Amendment.

Because I do not regard the dictum in *Sanders* as a correct statement of the law, because the holding of that case is not applicable in either *Robbins* or *Belton,* and because the search in both cases was supported by probable cause and falls within the automobile exception, I respectfully dissent in *Robbins* and concur in the judgment in *Belton.*