**Larry D. BROCK, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Sept. 25, 1981.

Discretionary Review Denied Feb. 9, 1982.

Tod D. Megibow, Owens & Graves, Chartered, Paducah, for appellant.

Steven L. Beshear, Atty. Gen., John H. Gray, Asst. Atty. Gen., Frankfort, for appellee.

Before HOGGE, HOWARD and McDONALD, JJ.

HOWARD, Judge.

Larry Brock appeals from a conviction for trafficking in a schedule III controlled substance. He contends on appeal that the trial court erred in denying his motion to suppress evidence obtained pursuant to a warrantless search of a vehicle and that his motion for directed verdict should have been granted. We affirm.

According to testimony at the suppression hearing and at trial, Officer Robert Carr, a narcotics officer with the Paducah City Police, received information from a confidential informant that a white van with Illinois license plates, carrying two "hippy-like" persons would be in Barkley Park within the hour to participate in a drug sale. Officer Carr further testified that the informant told him that the driver of the van would have drugs in the front of his pants. Officer Carr also testified that he knew the informant from past conversations regarding the informant's desire to provide information, knew that the Kentucky State Police considered the informant reliable, and that he knew the informant had been used successfully in the past.

Officer Carr received this information at about 11:00 A.M., briefed Officers Pugh, Carter and Midyett at approximately 11:20. Officer Pugh spotted the van in Barkley Park at the time specified by the informant. It had two occupants and Illinois plates. Pugh pulled the van over for rolling through a stop sign and crossing the center line. Officer Carter then arrived on the scene and received permission from the driver of the van, one Linders, to search the van. Linders accompanied Carter through the van. On emerging, Officer Carter noticed what appeared to be a hunting knife under appellant Brock's shirt. Carter removed the knife and ran a pat-down for further weapons over both Brock and Linders.

The pat-down of Linders revealed a tightly-rolled plastic bag of pills in the front of Linders' pants. Linders was then asked if the pills were all the drugs he had. Carter and Pugh both testified that appellant asked Linders whether he still had the marijuana. Linders replied that he did and pointed out its location to the police. The police asked for and received permission to search the van. (It appears from the record that the van was owned by a woman who was living with Linders at the time of the arrest and who later became Linders' wife.) The marijuana was retrieved and Linders arrested for possession.

During the search a lunch box with appellant's name on it was found and opened. It contained a large number of pills subsequently identified by the State Police Lab as being schedule III controlled substances.

Linders was taken into custody and appellant was permitted to leave the scene. The van was towed to the police garage.

The trial judge overruled the motion to suppress, finding that the information was reliable, consent was given and that exigent circumstances existed because the van was in a public place only two miles from the Illinois border and because Brock had been released. We agree with the trial court.

 Officer Carr testified as to the confidential informant's reliability and prior use of the informant by our State Police. Appellant and Linders appeared in a white van with Illinois plates in the place and at the time specified by the informant.

[P]robable cause for a search and an arrest without a warrant may be based upon information received through an informant so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge.

*Waugh v. Commonwealth*, Ky.App., 605 S.W.2d 43, 45 (1980). The police had probable cause to stop the van. Once the knife was spotted on appellant, a brief pat-down of both appellant and Linders was clearly justified under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Upon discovery of the pills on Linders, Officer Carter testified, Linders gave consent, a *second* time, to search of his van. We find no error in the seizure of the van and lunch box.

 Appellant contends that the search of the lunch box itself was impermissible under *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), lacking a search warrant. The Commonwealth, relying on the same case, contends that by its very nature, a lunch box is not personal in nature, as is luggage, and that the purpose of a lunch box is to serve as a repository for food, not personal items. *See, Arkansas v. Sanders*, 442 U.S. at 764–65, fn. 13, 99 S.Ct. at 2593–94, fn. 13, 61 L.Ed.2d at 245, fn. 13.

The Supreme Court said in that case that:

Not all containers and packages found by police during the course of a search will deserve the full protection of the Fourth Amendment. Thus, some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred.

On July 1, 1981, the United States Supreme Court rendered two opinions directly related to this question. In *Robbins v. California*, —— U.S. ——, 101 S.Ct. 2841, 69 L.Ed.2d 744, *Criminal Law Reporter,* Vol. 29, No. 14, p. 3115, the Court held that the warrantless search of an opaque, sealed package found during the lawful but warrantless search of the trunk of a car violated the Fourth Amendment, since the manner in which the package was wrapped evidenced a reasonable expectation of privacy with respect to its contents. Because *Robbins* involves the search of a car trunk, we do not feel it is applicable to this case.

In *New York v. Belton,* —— U.S. ——, 101 S.Ct. 2860, 69 L.Ed.2d 768, *Criminal Law Reporter*, Vol. 29, No. 14, p. 3124, at 3126, the Supreme Court holds:

Our reading of the cases suggests the generalization that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within "the area into which an arrestee might reach in order to grab a weapon or evidentiary item." ... Accordingly, we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.

It follows from that conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach.... Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have. (Citations omitted)

In *Belton*, a car was stopped for erratic driving and the occupants were arrested for possession of marijuana. After they were removed from the car, the passenger compartment was searched and a jacket belonging to one of the occupants was found. Inside a zippered jacket pocket a quantity of cocaine was discovered. *Belton* is clearly analogous to the case at hand.

It has been suggested that the standards for an automobile search are more stringent in Kentucky. This assertion is based on *Wagner v. Commonwealth*, Ky., 581 S.W.2d 352 (1979). However, *Wagner* did not involve a search contemporaneous with a custodial arrest. There, the automobile driver was taken to the police station, questioned, then arrested. Only then was the car impounded and searched.

Further, we must keep in mind that in this case, permission to search the van was given to the police prior to the search.

If the police have probable cause to believe that the vehicle contains evidence or constitutes a fruit or instrumentality of a crime they must procure a warrant in order to conduct a search *in the absence of the consent of the owner or permissive user.*

*Id. Wagner,* at 357.

For the foregoing reasons, we hold that the search of the lunch box was permissible and the contents of the box properly admitted into evidence.

As to appellant's contention that the court erred in refusing to grant a motion for directed verdict, our Supreme Court, in *Campbell v. Commonwealth*, Ky., 564 S.W.2d 528, 530 (1978), has said:

A motion for a directed verdict of acquittal should only be made (or granted) when the defendant is entitled to a complete acquittal—i.e. when, looking at the evidence as a whole, it would be clearly unreasonable for a jury to find the defendant guilty, *under any possible theory,*

of any of the crimes charged in the indictment or of any lesser included offenses. (Emphasis in the original).

The trial court acted properly both in denying suppression of evidence and in denying the motion for directed verdict. The judgment is therefore, affirmed.

All concur.