This case is controlled entirely by the United States Supreme Court's interpretation of search and seizure law as set out inUnited States v. Jacobsen, 466 U.S. 109, 104 S.Ct. 1652,80 L.Ed.2d 85 (1984). The facts in this case are remarkably similar to those in Jacobsen, but the application of the principles of that case mandate a different outcome in this case.
The appellant, Mark Anthony Seeley, pleaded guilty to possession of a controlled substance (cocaine), a violation of § 13A-12-212, Code of Alabama 1975. He specifically reserved his right to appeal the trial court's denial of his motion to suppress certain evidence and was sentenced to seven years in the penitentiary. His sentence was split and he was ordered to serve 60 days in jail and to spend 3 years on supervised probation.
The state's evidence at the appellant's suppression hearing tended to show that on January 30, 1993, the Federal Express courier service office in Madison, Alabama, received a package addressed to the appellant bearing a return address in Dallas, Texas. Fred Kaufmann, the Federal Express operations manager in Madison, testified that they were unable to deliver the package because the courier had trouble finding the address and because the customer service agent was unable to contact the appellant by telephone. Apparently the telephone number that had been given as the appellant's was no longer in service.
Kaufmann testified that if Federal Express cannot resolve a delivery problem through research, then it is a company practice to open the package to see if any other delivery information can be found. Kaufmann testified *Page 211 
that he opened the package. He testified that the package was about the size of a shoe box and that it was heavily wrapped in masking tape. Inside the package he found a tubular package wrapped in tape and packed in newspaper. Kaufmann testified that he smelled a strong odor similar to insecticide coming from the package. At that point he became suspicious and decided to call Officer Billy Ware, a narcotics officer with the Huntsville Police Department. He testified that he left the package in the same condition it was in until Ware arrived.
Ware testified that he arrived at the Federal Express office to inspect the package. Like Kaufmann, he testified that there was a strong odor of "bug spray." Ware testified that many substances are used to mask the smell of narcotics in packages — e.g., herbicide, gasoline, diesel fuel, fabric softener, and coffee. He then squeezed the tubular package and felt a powdery, granulated substance inside. Ware testified that he told Kaufmann that in his opinion the package contained narcotics. At that point, Ware called Officer Michael Posey of the Huntsville Police Department K-9 unit and asked him to bring his narcotics detection dog to the office. Before Posey arrived, Ware placed the tubular package in a metal electrical box on the wall in the southeast section of the warehouse portion of the office.
Posey testified that when he arrived, Ware instructed him to have the dog search the southeast section of the warehouse. Posey testified that the dog "alerted" in the area of the electrical box where the package was located. Posey testified that an "alert" occurs when the dog smells narcotics. He said that the dog's breathing pattern changes but that at that point the dog has not yet pinpointed the location. When the dog finds the strongest source of the odor it will scratch or bite at that location. Posey testified that his dog scratched on the electrical box where the package was located. At that time Posey pulled the dog off the search area and told Ware that there was a strong indication of narcotics in the electrical box where the package was hidden. Ware then retrieved the package from the electrical box.
Ware testified that he told Kaufmann that he was going to take the package to his office and he then signed a receipt for it. When Ware arrived at his office, he called the district attorney and explained how he came into possession of the package. After he talked with the district attorney Ware opened the package and performed a field test on the white powder contained inside. Ware testified that the test gave a positive indication for the presence of cocaine. Subsequent testing by the Alabama Department of Forensic Sciences proved that the powder was cocaine. He said that he then secured the package in his drug evidence locker.
On Monday, February 1, 1993, someone from Federal Express telephoned to tell Ware that the appellant had telephoned Federal Express and that he wanted his package delivered. Ware began making arrangements with the Marshall County Sheriff's Department for a controlled delivery. Ware testified that in preparation for the controlled delivery, he removed most of the cocaine powder from the package. He then mixed about 1.4 ounces of baking soda with two or three grams of the cocaine powder and put that mixture in the package. Also, Ware borrowed a van and a courier's uniform from Federal Express in order to make the delivery.
Ware telephoned the appellant on Monday and arranged to deliver the package on Tuesday, February 2, 1993, at a place in Marshall County near Guntersville. Ware met with three officers from the Marshall County Sheriff's Department's drug enforcement unit to execute the controlled delivery. These officers were Sonny Riddle, Paul Evans, and Martin Killion. Martin Killion wore the Federal Express uniform and drove the van to make the delivery while Ware, Riddle, and Evans waited nearby. Killion met the appellant at the designated location and delivered the package and the appellant signed for it, got in his car, and drove away. After the appellant had driven a few blocks, Ware, Riddle, and Evans stopped his car and arrested him. The package was recovered from the appellant.
The appellant contends on appeal that the trial court erred in denying his motion to *Page 212 
suppress the cocaine. More specifically, he contends that Ware's warrantless search and seizure of the package violated his rights under the Fourth andFourteenth Amendments to the United States Constitution. TheFourth Amendment to the United States Constitution states:
 "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
"Subject to only a few exceptions, the Fourth andFourteenth Amendments of the United States Constitution support the proposition that a search conducted without a warrant issued on probable cause is unreasonable." Brannon v. State,549 So.2d 532, 536 (Ala.Cr.App. 1989). These exceptions include: "(1) plain view, (2) consent, (3) incident to a lawful arrest, (4) hot pursuit or emergency situations, (5) exigent circumstances coupled with probable cause, and (6) stop and frisk situations." Brannon, 549 So.2d at 536. This case involves several events that could possibly invoke the application of the Fourth Amendment. We will address each event separately.
The initial opening of the appellant's package by Federal Express employee Kaufmann was a private act, not a government act. The Fourth Amendment does not apply "to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official."Walter v. United States, 447 U.S. 649, 662, 100 S.Ct. 2395,2404, 65 L.Ed.2d 410 (1980). Therefore, no Fourth Amendment
violation occurred at that point.
Likewise, the "sniff test" by the narcotic detection dog did not come within the protection afforded by theFourth Amendment.
 "This conclusion is dictated by United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110
(1983), in which the Court held that subjecting luggage to 'sniff test' by a trained narcotics detection dog was not a 'search' within the meaning of the Fourth Amendment.
 " 'A "canine sniff" by a well-trained narcotics detection dog, however, does not require opening the luggage. It does not expose noncontraband items that otherwise would remain hidden from public view, as does, for example, an officer's rummaging through the contents of the luggage. Thus, the manner in which information is obtained through this investigative technique is much less intrusive than a typical search. Moreover, the sniff discloses only the presence or absence of narcotics, a contraband item. Thus, despite the fact that the sniff tells the authorities something about the contents of the luggage, the information obtained is limited.' "
Jacobsen, 466 U.S. at 123-34, 104 S.Ct. at 1662,80 L.Ed.2d at 101. (Some citations omitted.)
Therefore, this case turns on the actions of the police after the discovery of the appellant's package by a private party and after the narcotics detection dog "alerted" on the appellant's package. The "sniff test" indicated that the appellant's package might contain drugs. Based upon this information, Ware, an officer of the Huntsville Police Department, opened the package without a search warrant and inspected its contents. He also conducted a field test, which positively indicated the presence of cocaine.
The facts of this case are strikingly similar to those inJacobsen. In Jacobsen, employees at a Federal Express office in the Minneapolis-St. Paul airport found a package that had been damaged by a forklift. In accordance with company policy when there might be an insurance claim, they opened the package and examined its contents. The Court described the contents of the package as follows:
 "The container was an ordinary cardboard box wrapped in brown paper. Inside the box five or six pieces of crumpled newspaper covered a tube about 10 inches long; the tube was made of the silver tape used on basement ducts. The supervisor *Page 213 
and office manager cut open the tube, and found a series of four zip-lock bags, the outermost enclosing the other three and the innermost containing about six and a half ounces of white powder."
When the Federal Express employees found the white powder, they notified the Drug Enforcement Administration (DEA). The DEA agents conducted a field test, which indicated the powder was cocaine. Later, agents conducted a second field test and obtained a search warrant for the addressee's residence.
In Jacobsen, the Court addressed the validity of government searches that follow searches by private parties, specifically searches by common carriers in the course of their business.
 "When the wrapped parcel involved in this case was delivered to the private freight carrier, it was unquestionably an 'effect' within the meaning of the Fourth Amendment. Letters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy; warrantless searches of such effects are presumptively unreasonable. Even when government agents may lawfully seize such a package to prevent loss or destruction of suspected contraband, the Fourth Amendment requires that they obtain a warrant before examining the contents of such a package. Such a warrantless search could not be characterized as reasonable simply because, after the official invasion of privacy occurred, contraband is discovered. Conversely, in this case the fact that agents of the private carrier independently opened the package and made an examination that might have been impermissible for a government agent cannot render otherwise reasonable conduct unreasonable. The reasonableness of an official invasion of the citizen's privacy must be appraised on the basis of the facts as they existed at the time the invasion occurred.
 "The initial invasions of respondent's package were occasioned by private action. Those invasions revealed that the package contained only one significant item, a suspicious looking tape tube. Cutting the end of the tube and extracting its contents revealed a suspicious looking plastic bag of white powder. Whether those invasions were accidental or deliberate, and whether they were reasonable or unreasonable, they did not violate the Fourth Amendment because of their private character.
 "The additional invasions of respondent's privacy by the Government agent must be tested by the degree to which they exceeded the scope of the private search. That standard was adopted by a majority in Walter v. United States, supra
[447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980)]."
466 U.S. at 114-15, 104 S.Ct. at 1656-57, 80 L.Ed.2d at 94-5. (Emphasis added.)
We have no choice but to follow the holding ofJacobsen because the facts of the present case are so similar. State courts are bound by the interpretations given to theFourth Amendment by the United States Supreme Court. Mapp v.Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Wolfv. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949). If we ignore Jacobsen we would be ignoring our duty to uphold the Constitution and would be setting the stage for almost certain reversal by a higher court.
In this case, the appellant's package was almost identical to the one in Jacobsen. Cocaine had been wrapped in a tape tube, which was then wrapped in newspaper and stored in a box. However, in Jacobsen the private search went beyond that in the present case. The United States Supreme Court upheld the search by government agents because it did not exceed the scope of the private search. Here, Kaufmann, the Federal Express operations manager, did not cut open the tape tube as was done inJacobsen. Rather, he stopped the search when he smelled the insecticide odor. Under Jacobsen, we must judge the actions of the police by the degree by which they exceeded the scope of the private search.
Under Jacobsen, Ware exceeded the scope of Kaufmann's search when he cut open the tube in the appellant's package without a search warrant. Jacobsen establishes that a legitimate expectation of privacy exists in *Page 214 
sealed packages sent by common carrier and that a warrantless government search cannot exceed what was carried out by private parties. Ware should have obtained a search warrant before cutting open the tubular package that contained cocaine. Ware had probable cause to obtain a search warrant based on his observations and on the results of the "sniff test" by the narcotics detection dog. Because Ware had dominion and control over the package, there was little chance of loss or destruction of the package. There were no exigent circumstances that justified opening the package before obtaining a search warrant. Therefore, under Jacobsen, the trial court should have granted the appellant's motion to suppress evidence of the cocaine.
 "When police have reasonable, articulable suspicion that evidence of criminal activity is located in a movable container, they may secure the container to prevent its loss or destruction, but they must get a warrant before conducting a search. In certain circumstances, however, the police may conduct warrantless searches of both open and closed containers. For example, based upon probable cause, the police may search any container located in an automobile, whether the probable cause applies to the container itself or to the automobile as a whole. The police also need no warrant to search a container if its illicit contents are in plain view or may be inferred from its outward appearance, to search an abandoned container, or to search a container to the extent of a previously conducted private search."
Criminal Procedure Project, 82 Geo.L.J. 671-72 (1994). (Emphasis added.)
The state contends that the appellant's package falls within the "plain view" exception because its configuration is similar to that commonly used to ship drugs by common carrier. However, the state bases this argument on language in Arkansas v.Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), which was later quoted in Robbins v. California, 453 U.S. 420,101 S.Ct. 2841, 69 L.Ed.2d 744 (1981). However, the state's argument is somewhat misplaced. First, Sanders and Robbins
addressed searches of containers in the context of automobile searches, which is not an issue in this case. Second, the holdings of Sanders and Robbins were limited somewhat inUnited States v. Ross, 456 U.S. 798, 102 S.Ct. 2157,72 L.Ed.2d 572 (1982), and Sanders was overruled in California v. Acevedo,500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991).
The appellant further contends that Huntsville police officers Ware and Posey illegally investigated the package at Federal Express in Madison because they were outside their jurisdiction. This issue was not presented in the trial court and, therefore, was not preserved for our review. Taylor v.State, 600 So.2d 1080, 1081 (Ala.Cr.App. 1992).
The court erred in denying the appellant's motion to suppress. For the foregoing reasons, the judgment is reversed and the cause remanded to the Marshall County Circuit Court for proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All the Judges concur, except LONG, J., who recuses.