MADDOX, Justice
(dissenting).
A majority of this Court refuses to review the judgment of the Court of Criminal Appeals; I believe the judgment denying review misapplies the law of search and seizure as it relates to the search of a closed container inside a package that was opened by Federal Express employees to determine the ownership of the package, after the Fed Ex employees were unsuccessful in finding the address shown on the package. The Fed Ex employees were following company policy.
I would issue the writ and reverse the judgment of the Court of Criminal Appeals.
The facts of the case are not in material dispute. They are set out in the Court of Criminal Appeals’ opinion:
“The appellant, Mark Anthony Seeley, pleaded guilty to possession of a controlled substance (cocaine), a violation of § 13A-12-212, Code of Alabama 1975. He specifically reserved his right to appeal the trial court’s denial of his motion to suppress certain evidence and was sentenced to seven years in the penitentiary. His sentence was split and he was ordered to serve 60 days in jail and to spend 3 years on supervised probation.
“The state’s evidence at the appellant’s suppression hearing tended to show that on January 30, 1993, the Federal Express courier service office in Madison, Alabama, received a package addressed to the appellant bearing a return address in Dallas, Texas. Fred Kaufmann, the Federal Express operations manager in Madison, testified that they were unable to deliver the package because the courier had trouble finding the address and because the customer service agent was unable to contact the appellant by telephone. Apparently the telephone number that had been given as the appellant’s was no longer in service.
“Kaufmann testified that if Federal Express cannot resolve a delivery problem through research, then it is a company practice to open the package to see if any other delivery information can be found. Kaufmann testified that he opened the package. He testified that the package was about the size of a shoe box and that it was heavily wrapped in masking tape. Inside the package he found a tubular package wrapped in tape and packed in newspaper. Kaufmann testified that he smelled a strong odor similar to insecticide coming from the package. At that point he became suspicious and decided to call Officer Billy Ware, a narcotics officer with the Huntsville Police Department. He testified that he left the package in the same condition it was in until Ware arrived.
“Ware testified that he arrived at the Federal Express office to inspect the package. Like Kaufmann, he testified that there was a strong odor of ‘bug spray.’ Ware testified that many substances are used to mask the smell of narcotics in packages — e.g., herbicide, gasoline, diesel fuel, fabric softener, and coffee. He then squeezed the tubular package and felt a powdery, granulated substance inside. Ware testified that he told Kaufmann that in his opinion the package contained narcotics. At that point, Ware called Officer Michael Posey of the Huntsville Police Department K-9 unit and asked him to bring his narcotics detection dog to the office. Before Posey arrived, Ware placed the tubular package in a metal electrical box on the wall in the southeast section of the warehouse portion of the office.
“Posey testified that when he arrived, Ware instructed him to have the dog search the southeast section of the warehouse. Posey testified that the dog ‘alerted’ in the area of the electrical box where the package was located. Posey testified that an ‘alert’ occurs when the dog smells narcotics. He said that the dog’s breath *216 ing pattern changes but that at that point the dog has not yet pinpointed the location. When the dog finds the strongest source of the odor it will scratch or bite at that location. Posey testified that his dog scratched on the electrical box where the package was located. At that time Posey pulled the dog off the search area and told Ware that there was a strong indication of narcotics in the electrical box where the package was hidden. Ware then retrieved the package from the electrical box.
“Ware testified that he told Kaufmann that he was going to take the package to his office and he then signed a receipt for it. When Ware arrived at his office, he called the district attorney and explained how he came into possession of the package. After he talked with the district attorney Ware opened the package and performed a field test on the white powder contained inside. Ware testified that the test gave a positive indication for the presence of cocaine. Subsequent testing by the Alabama Department of Forensic Sciences proved that the powder was cocaine. He said that he then secured the package in his drug evidence locker.
“On Monday, February 1,1993, someone from Federal Express telephoned to tell Ware that the appellant had telephoned Federal Express and that he wanted his package delivered. Ware began making arrangements with the Marshall County Sheriff’s Department for a controlled delivery. Ware testified that in preparation for the controlled delivery, he removed most of the cocaine powder from the package. He then mixed about 1.4 ounces of baking soda with two or three grams of the cocaine powder and put that mixture in the package. Also, Ware borrowed a van and a courier’s uniform from Federal Express in order to make the delivery.
<cWare telephoned the appellant on Monday and arranged to deliver the package on Tuesday, February 2, 1993, at a place in Marshall County near Guntersville. Ware met with three officers from the Marshall County Sheriff’s Department’s drug enforcement unit to execute the controlled delivery. These officers were Sonny Riddle, Paul Evans, and Martin Killion. Martin Killion wore the Federal Express uniform and drove the van to make the delivery while Ware, Riddle, and Evans waited nearby. Killion met the appellant at the designated location and delivered the package and the appellant signed for it, got in his ear, and drove away. After the appellant had driven a few blocks, Ware, Riddle, and Evans stopped his car and arrested him. The package was recovered from the appellant.”
Seeley v. State, 669 So.2d 209, 210-11 (Ala.Crim.App.1995).
Based on the above quoted facts, and applying the principles of law stated in recent opinions of the Supreme Court of the United States, I think it apparent that the Court of Criminal Appeals erred in holding that the State’s warrantless search and seizure of the defendant’s parcel violated the defendant’s rights under the Fourth and Fourteenth Amendments to the United States Constitution.
The Court of Criminal Appeals, in reversing the defendant’s conviction, relies heavily on the United States Supreme Court’s interpretation of search and seizure law as set out in United States v. Jacobsen, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). In Jacobsen, the Court held that removal by federal agents, who had been informed by employees of a private freight carrier that they had observed a white powdery substance in the innermost of a series of four plastic bags that had been concealed in a tube inside a damaged package, was not an unreasonable search and seizure.
In its opinion, the Court of Criminal Appeals stated that “[t]he facts in this case are remarkably similar to those in Jacobsen, but the application of the principles of that case mandate a different outcome in this case.” 669 So.2d at 210. More specifically, my problem deals with the following paragraph the Court of Criminal Appeals quoted from Jacobsen in support of its holding that the trial court erred in denying the defendant’s motion to suppress:
“When the wrapped parcel involved in this case was delivered to the private freight carrier, it was unquestionably an *217 ‘effect’ within the meaning of the Fourth Amendment. Letters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy;' warrantless searches of such effects are presumptively unreasonable. [Omitted footnote at this point cited United States v. Chadwick.] Even when government agents may lawfully seize such a package to prevent loss or destruction of suspected contraband, the Fourth Amendment requires that they obtain a warrant before examining the contents of such a package. [Omitted footnote cites Chadwick.] Such a warrantless search could not be characterized as reasonable simply because, after the official invasion of privacy occurred, contraband is discovered. Conversely, in this ease the fact that agents of the private carrier independently opened the package and made an examination that might have been impermissible for a government agent cannot render otherwise reasonable conduct unreasonable. The reasonableness of an official invasion of the citizen’s privacy must be appraised on the basis of the facts as they existed at the time the invasion occurred.”
466 U.S. at 114-15, 104 S.Ct. at 1657 (as quoted at 669 So.2d at 213) (the Court of Criminal Appeals added the emphasis in that quotation, but did not indicate that it was omitting footnotes citing United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), abrogated by California v. Acevedo, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991)).
It is apparent to me that the Court of Criminal Appeals relied heavily on the Jacob-sen opinion to reach its result. I would issue the writ because the Court of Criminal Appeals seems to be applying principles of law that were established by Chadwick, which was overruled.by California v. Acevedo, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991).
The State, in its brief, correctly states that the United States Supreme Court, in California v. Acevedo, further clarified the law as it applies to searches of containers, especially those found in an automobiles. In Acevedo, the Supreme Court stated:
“The interpretation of the Carroll [Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925)] doctrine set forth in Ross [United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) ] now applies to all searches of containers found in an automobile. In other words, the police may search without a warrant if their search is supported by probable cause. The Court in Ross put it this way:
“ ‘The scope of a warrantless search of an automobile ... is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found.’ 456 U.S., at 824, 102 S.Ct., at 2172.
“It went on to note: ‘Probable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab.’ Ibid. We reaffirm that principle. In the case before us, the police had probable cause to believe that the paper bag in the automobile’s trunk contained marijuana. That probable cause now allows a warrant-less search of the paper bag. The facts in the record reveal that the police did not have probable cause to believe that contraband was hidden in any other part of the automobile and a search of the entire vehicle would have been without probable cause and unreasonable under the Fourth Amendment.”
500 U.S. at 579-80, 111 S.Ct. at 1991.
I recognize that this case and the eases cited in the State’s brief (for example, Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), which was later quoted in Robbins v. California, 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981), overruled by United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982)) all involve the search of a package located in an automobile, but I do not believe that the automobile exception to the warrant requirement, while significant, is determinative of the right to seize property that police have *218 probable cause to believe is contraband. In my opinion, the question whether the search and seizure are reasonable must depend upon whether the defendant’s expectations of privacy were violated. Because I believe that from a “totality of the circumstances” the police had probable cause to believe the sealed container contained contraband, they had a right to seize it without a warrant. Stated differently, it seems to me that the warrantless search in this case can be justified on the grounds that, at the time the police seized the container, they had probable cause to believe that it contained contraband, and that the owner had no reasonable expectation of privacy, in view of the totality of the circumstances surrounding the seizure. In short, I believe that at the time the contraband was seized the officers had probable cause to believe that the container held contraband that was in “plain view,” and that the police, having probable cause to believe that the container held contraband, had a right to seize it and search it, without first obtaining a warrant. Cf. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1975). In Chambers, the United States Supreme Court said that if police officers had had probable cause to make a warrantless search of an automobile on the highway, then they could make a warrantless search of the vehicle later when it was in police custody, even though the police could have obtained a warrant. The essence of the holding in Chambers, in my opinion, is that the Supreme Court of the United States, in enforcing the Fourth Amendment’s prohibition against unreasonable searches and seizures, will insist upon probable cause as a minimum requirement for a reasonable search permitted by the Constitution, but if probable cause exists, and an exception to the warrant requirement also exists, such as the “plain view” exception, as in this case, then the warrantless search and seizure are not unreasonable.
Under the “plain view” doctrine, if the police are lawfully in a position from which they can view an object, if the incriminating character of the object is immediately apparent, and if the officers have a lawful right to access to the object, then they may seize it without a warrant. In the present case, the police were called by Federal Express employees to inspect the package. They did inspect it. The police were lawfully in a position from which they could view the object. The object had been wrapped by a method known by police to be a common method used to conceal drugs; the object had the smell of insecticide, which was also known by police to be commonly used to attempt to conceal the odor of drugs; the object felt like it held a granular substance (cocaine); and, finally, a trained narcotics detection dog indicated that the object contained drugs. All of the attendant factors, combined together, provided the police with sufficient probable cause to believe that the package contained contraband. It is well settled that one has no legitimate expectation of privacy in contraband, and the Fourth Amendment protects persons only from “unreasonable searches and seizures.”
As I understand the “exclusionary rule,” it was to deter police misconduct by depriving the prosecuting authority of the right to use evidence that was illegally seized. In my opinion, the conduct of the police in this case, based on all the attendant circumstances, did not violate this defendant’s privacy rights. I must respectfully dissent.